COURT OF APPEALS OF VIRGINIA

Present:  Judges Beales, Decker and AtLee
Argued at Salem, Virginia

LAMONT ANTHONY WOODS

OPINION BY
v.       Record No. 0315-15-3            JUDGE RANDOLPH A. BEALES
MARCH 8, 2016

COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF HENRY COUNTY
David V. Williams, Judge

Harold E. Slate, II, for appellant.

Christopher P. Schandevel, Assistant Attorney General (Mark R.
Herring, Attorney General, on brief), for appellee.

Following a jury trial, Lamont Anthony Woods (appellant) was convicted of one count of

second-degree murder, which was reduced from the charge of first-degree murder, in violation of

Code § 18.2-32.[1]  Appellant argues on appeal that the circuit court erred in denying a jury

instruction on the lesser-included offense of voluntary manslaughter.  For the reasons below, we

affirm the ruling of the circuit court.

I. BACKGROUND

"When reviewing a trial court's refusal to give a proffered jury instruction, we view the

evidence in the light most favorable to the proponent of the instruction," in this case appellant.

Commonwealth v. Vaughn, 263 Va. 31, 33, 557 S.E.2d 200, 222 (2002).

---

[1] Appellant was also convicted of maliciously shooting into an occupied motor vehicle in
violation of Code § 18.2-154, use of a firearm in commission of a murder in violation of Code
§ 18.2-53.1, and child endangerment in violation of Code § 18.2-371.1(B).  Appellant only
challenges his second-degree murder conviction on appeal.

Toward the end of April 2012, appellant's relationship with his girlfriend, Takea Turner (Turner), seriously deteriorated. Appellant testified that he assumed that Turner and Lamar Ward (the victim) were romantically involved. Turner and appellant had been living together in Henry County until a few days before the killing. On April 27, 2012, Turner and her infant son (Baby Woods) stayed with her friend, Manesha Ward (Ward), at the home of Ward and her boyfriend, Dacha Fitzgerald (Fitzgerald). The victim, who is Ward's brother, also stayed at Ward's house that night. Appellant testified that on that same night, the victim and Turner repeatedly called and threatened appellant while he was "hanging out" with several people, including Kelly Trull (Trull), who corroborated this account. Appellant also testified that Fitzgerald and the victim came to appellant's house to threaten him the night before the shooting occurred – and that appellant then ran away from them into the woods.

Details Surrounding the Murder

On the morning of April 28, 2012 (the day of the murder), Turner texted appellant some messages that he characterized as threatening. Ward, Fitzgerald, the victim, Turner, and Baby Woods then drove to and arrived at appellant's trailer in Ward's vehicle. Ward drove, Turner sat in the front passenger seat, the victim sat in the left rear passenger seat, Fitzgerald sat in the right rear passenger seat, and Baby Woods was seated on Turner's lap. Appellant testified that he was then wearing his gun holstered because he thought he would be leaving before Turner arrived. Turner exited the car and began arguing with appellant. The victim then began speaking from the backseat, saying things like "Fuck him" and "If he got a problem, then he can do something." Appellant testified that it was at this point that he realized the victim was actually in the car – and that they began arguing.

Appellant then provided his account of what happened next, stating, "So as we are arguing, I am walking towards the car. So when I walked towards the car, yea, I was telling him

- 2 -

to get out the car. . . . If he had a problem with me, then I was willing to fight it out and get it over with." Appellant said that his intention was only to engage in a fistfight. "So as I'm getting closer to the car, that's when he pulls his gun out." Appellant said of the victim, "He basically just flashed [his gun] out of the window. He was still in the car at the time." Appellant testified that after the victim flashed the gun with his right hand, "So that's when I kind of slid behind the tree and I kind of asked him to leave . . . ." Appellant further testified that he heard car doors opening and shutting, and he heard the victim say something threatening and tell appellant to come out from behind the tree. "So as I come behind the tree: at this time, I had pulled my gun out of my holster, so as I come behind the tree, he had his gun kind of like, it was up by his side. He was standing outside of the car, but he was still in the doorway, kind'a." Counsel asked appellant, "So he was in between the door and where it was open?" Appellant responded, "Right. So as I come behind the tree, . . . he raises his gun, and that's when I just started shooting, running towards the woods."

When asked whether he shot at the victim ten times, appellant responded, "Maybe. I'm not sure. I feared for my life, so I just wasn't counting. I wasn't really aiming. I just directed the gun in his direction and I won't [sic] really trying to purposefully kill him or nothing like that. I was just trying to get out of there." Appellant admitted that no one else fired a shot, and did not dispute that every shot he fired hit the victim. Appellant testified that he was afraid of the victim "because of his reputation and the threats that he made over the phone." He knew that the victim took a gun with him everywhere he went. Appellant did not dispute that he shot through the car's back windshield. Fitzgerald testified that he saw appellant shooting the victim through the rear window of the car. Fitzgerald also testified that he exited the car and ran to the woods when appellant began shooting the victim.

Soon after the shooting, Ward called 9-1-1, informing them that her brother had been shot and was not breathing. The phone call then suddenly terminated on the caller's end. Alfred Lemons, an eyewitness to the subsequent car accident, testified that he observed a car (later determined to be Ward's vehicle) drive by him, skid off the road, and hit a tree. Ward, Turner, Baby Woods, and the victim's body were thrown from the vehicle, killing all of the living passengers.

### Uncontroverted Physical Evidence

Assistant Chief Medical Examiner Gayle Suzuki testified that the victim's cause of death was multiple gunshot wounds. The victim received ten gunshot wounds – three of which were lethal. All three lethal gunshot wounds were consistent with being shot in the back. In fact, appellant himself acknowledged that over half of the shots fired were fired from behind the victim. Dr. Suzuki testified that the superficial injuries the victim received in the car crash were sustained post-mortem.

Wendy Gibson – a forensic scientist with the Department of Forensic Science and an expert in identification of firearms and tool marks – testified, "During the course of this analysis, I was able to identify that all ten of these cartridge cases [found at the scene] had been fired in one firearm." All ten cartridge cases were the same brand and caliber. Further, each of the five bullets recovered from the victim's body was consistent in design with the brand and caliber of the ten cartridge cases and was fired from one firearm.

### Jury Instructions

Defense counsel proffered jury instructions on both self-defense and right-to-arm, which the trial judge granted. Defense counsel also requested jury instructions on voluntary and involuntary manslaughter suggesting that there was some "hotbloodedness," based on the

argument that occurred before the shooting.[2] The trial judge found that there was no evidence of involuntary manslaughter, and "for voluntary manslaughter, it seems to me that you would have to have some elements that aren't contained in the evidence. I'm going to instruct on first degree, second degree, and then obviously, I'll instruct on self-defense."

## II. ANALYSIS

### A. Standard of Review

"As a general rule, the matter of granting and denying instructions does rest in the sound discretion of the trial court." Cooper v. Commonwealth, 277 Va. 377, 381, 673 S.E.2d 185, 187 (2009). However, "[i]f any credible evidence in the record supports a proffered instruction on a lesser included offense, failure to give the instruction is reversible error." Brandau v. Commonwealth, 16 Va. App. 408, 411, 430 S.E.2d 563, 564 (1993) (quoting Boone v. Commonwealth, 14 Va. App. 130, 132, 415 S.E.2d 250, 251 (1992)). "Such an instruction, however, must be supported by more than a mere scintilla of evidence." Id. (quoting Boone, 14 Va. App. at 132, 415 S.E.2d at 251). Thus, a reviewing court's "sole responsibility in reviewing [jury instructions] is to see that the law has been clearly stated and that the instructions cover all issues which the evidence fairly raises." Cooper, 277 Va. at 381, 673 S.E.2d at 187 (quoting Molina v. Commonwealth, 272 Va. 666, 671, 636 S.E.2d 470, 473 (2006)). This Court reviews the record to determine whether there was more than a scintilla of credible evidence in support of the proponent's jury instruction. To the extent that an issue of law may be raised, this Court reviews it *de novo*.

---

[2] Appellant does not assign error on appeal to the circuit court's denial of his involuntary manslaughter instruction.

B.  No Evidence of Voluntary Manslaughter

Appellant alleges that "the trial court abused its discretion in failing to allow a jury instruction for the lesser-included charge of voluntary manslaughter, despite being supported by more than a scintilla of evidence."

Second-degree murder and voluntary manslaughter are both lesser-included offenses of first-degree murder.  Puckett v. Commonwealth, 182 Va. 237, 240, 28 S.E.2d 619, 620 (1944). Second-degree murder, of which the jury convicted appellant, is defined as a malicious killing. Turner v. Commonwealth, 23 Va. App. 270, 274, 476 S.E.2d 504, 506 (1996), aff'd, 255 Va. 1, 492 S.E.2d 447 (1997) (affirming "[f]or the reasons stated by the Court of Appeals").  In order for an act to be done maliciously, the act must be done "wilfully or purposefully."  Essex v. Commonwealth, 228 Va. 273, 280, 322 S.E.2d 216, 219-20 (1984) (quoting Williamson v. Commonwealth, 180 Va. 277, 280, 23 S.E.2d 240, 241 (1942)).  "Malice is evidenced either when the accused acted with a sedate, deliberate mind, and formed design, or committed any purposeful and cruel act without any or without great provocation."  Branch v. Commonwealth, 14 Va. App. 836, 841, 419 S.E.2d 422, 426 (1992).

Voluntary manslaughter is the unlawful killing of another, "committed in the course of a sudden quarrel, or mutual combat, or upon a sudden provocation, and without any previous grudge, and the killing is from the sudden heat of passion growing solely out of the quarrel, or combat, or provocation."  Wilkins v. Commonwealth, 176 Va. 580, 583, 11 S.E.2d 653, 654 (1940).  "'Heat of passion refers to the furor brevis which renders a man deaf to the voice of reason.'  '[It] excludes malice when provocation reasonably produces fear [or anger] that causes one to act on impulse without conscious reflection.'"  Rhodes v. Commonwealth, 41 Va. App. 195, 200 583 S.E.2d 773, 775 (2003) (first quoting Caudill v. Commonwealth, 27 Va. App. 81, 85, 497 S.E.2d 513, 514-15 (1998), and then quoting Graham v. Commonwealth, 31 Va. App.

- 6 -

662, 671, 525 S.E.2d 567, 571 (2000)). "Malice and heat of passion cannot coexist." Turner, 23 Va. App. at 275, 476 S.E.2d at 506.

"As a general rule, whether provocation, shown by credible evidence, is sufficient to engender the furor brevis necessary to rebut the presumption of malice arising from a homicide is a question of fact." McClung v. Commonwealth, 215 Va. 654, 656, 212 S.E.2d 290, 292 (1975). However, "when the trial court, giving the defendant the benefit of every reasonable inference from the evidence, can say that the minds of reasonable men could not differ does the question become a question of law." Id. In a trial for first-degree murder, "a trial court must instruct the jury on the lesser-included offense of voluntary manslaughter if the evidence of heat of passion and reasonable provocation amounts to 'more than a scintilla.'" Id. at 275, 476 S.E.2d at 507. "When the evidence in a prosecution warrants a conviction of the crime charged, and there is no independent evidence warranting a conviction for a lesser-included offense, an instruction on the lesser offense should not be given." Commonwealth v. Leal, 265 Va. 142, 145-46, 574 S.E.2d 285, 287 (2003) (citing Guss v. Commonwealth, 217 Va. 13, 14, 225 S.E.2d 196, 197 (1976)).

In this case, appellant does not assign any error to the sufficiency of the evidence for second-degree murder, but instead argues that the trial court erred in denying appellant's proposed jury instruction for voluntary manslaughter. Thus, the question before us is whether there is more than a scintilla of credible evidence of voluntary manslaughter. There is some evidence that supports a finding of provocation, and appellant contends that there is more than a scintilla of evidence to show that he was acting in the heat of passion when he shot the victim to death. Appellant, however, *never* argued that he was entitled to the voluntary manslaughter instruction because he was so overcome by fear or anger that he intentionally shot the victim ten times. Rather, he claimed that he "wasn't really aiming" at the victim while he was shooting and

- 7 -

running away from the victim. However, appellant's testimony is not supported by the undisputed physical evidence. Instead, the physical evidence completely contradicts appellant's testimony. In this case, the physical evidence affirmatively shows that appellant exerted great care in aiming at the victim and in shooting him, which contradicts appellant's theory that his reason was overcome by fear. Because appellant's testimony on this matter was contrary to the physical evidence, "it pales to no more than a scintilla when viewed in light of the other undisputed evidence at trial." Brandau, 16 Va. App. at 413, 430 S.E.2d at 566.

In Brandau v. Commonwealth, this Court found that the evidence, in its totality, was not sufficient to require the circuit court to give a lesser-included jury instruction. Id. at 415, 430 S.E.2d at 567. Police officers arrived at Brandau's home in order to evict him and began knocking on the door. Id. at 409, 430 S.E.2d at 563. Brandau, while inside his home, shot at his front door as a police officer announced himself repeatedly and attempted to push through the door into the entrance. Id. at 410, 430 S.E.2d 563-64. Brandau gave conflicting testimony, but indicated that he knew someone was outside before he retrieved his gun and began shooting at the door. Id. at 412, 430 S.E.2d 565. However, Brandau claimed that he only intended to shoot in an attempt to scare away the individual at the door. The undisputed evidence affirmatively showed five bullet holes in the front door and three in the wall next to the door – none of which exceeded five feet in height – and that the trigger on Brandau's gun required the shooter to pull it every time the shooter wished to fire a bullet. Id. This Court found that "[Brandau's] testimony may amount to more than a scintilla of evidence when viewed in a vacuum, but it pales to no more than a scintilla when viewed in light of the other undisputed evidence at trial." Id. at 413, 430 S.E.2d at 566.

Similarly in this case, there is affirmative physical evidence in the record that belies appellant's testimony that he was not trying to "purposefully kill [the victim]" and that he was

"just trying to get out of there."  The forensic evidence at trial paints a very different picture –
revealing that appellant shot at the victim ten times and that all ten shots hit the victim, even
when at least one of appellant's shots caused the bullet to travel through the car's back glass
windshield.  The evidence further demonstrates that – at some point during the encounter – the
victim ended up back inside the car, and all ten shots fired still hit the victim even though the
victim's position changed during the barrage of gunfire.  Thus, even when we accept appellant's
testimony that the victim was standing partly out of the car when appellant started shooting him,
the victim at some point was a moving target as he ended up back inside.  This undisputed
evidence proves that appellant willfully and purposefully shot the victim with a deliberate mind.
It contradicts the theory that, while overcome with fear, appellant made a series of "lucky" shots
by aiming in the victim's general direction as appellant fled.  Consequently, appellant's
testimony "pales to no more than a scintilla when viewed in light of the other undisputed
evidence at trial."  Brandau, 16 Va. App. at 413, 430 S.E.2d at 566.

In McClung v. Commonwealth, the Supreme Court determined that McClung was
entitled to a jury instruction on voluntary manslaughter because there was credible evidence of
provocation and heat of passion.  McClung, 215 Va. at 656, 212 S.E.2d at 292.  McClung shot
and killed her ex-fiancé because he was attempting to rape her.  Id. at 657, 212 S.E.2d at 292.  At
trial, there was evidence of a history of abuse, that she quit working for him on the day of the
shooting, that he came to her house and entered through a locked door, and that he was found
shot while unclothed in her bedroom.  Id. at 655, 212 S.E.2d at 291-92.  Of the four shots fired,
only two hit the victim.  Id.  Independent testimony at trial established that McClung was an
excellent shot.  Id. at 656, 212 S.E.2d at 292.  The Court found that "the jury could have
concluded that the number of bullets fired and the scattered pattern of their impact indicated that
her reason had been dethroned and that her normal motor reflexes had been disrupted by the heat

of her passion." Id. at 657, 212 S.E.2d at 293. Conversely, the evidence in this case does not support a finding that appellant's "reason had been dethroned" or that his "normal motor reflexes had been disrupted" by heat of passion. All ten shots directed at this victim hit the victim, and more than half of the shots were fired from behind. In McClung, by contrast, the physical evidence *supported* McClung's testimony. Therefore, no matter how plausible appellant's story in this case appears when viewed by itself in a vacuum, his statements actually do not amount to more than a scintilla of evidence when viewed in light of the other undisputed evidence at trial.

In Turner v. Commonwealth, on which appellant relies, this Court found that Turner was entitled to a voluntary manslaughter jury instruction in his first-degree murder trial. Turner, 23 Va. App. at 275, 476 S.E.2d at 507. However, Turner is readily distinguishable because the uncontroverted evidence in Turner did not contradict Turner's testimony. Turner had a history with the victim. Id. at 273, 476 S.E.2d at 505. In addition, the victim had stolen from Turner, and had threatened to kill Turner when his stealing was discovered. Id. at 273, 476 S.E.2d at 506. During the course of the events between Turner and the victim, Turner's mental state deteriorated, and he thought he could smell the victim in his home. Id. One night, while Turner was driving to pick up a pizza, he saw the victim sitting in a car. Id. Turner saw the victim raise his hand and believed that the victim had a gun. Id. Turner testified that he sped away with the victim pursuing him, and the evidence showed that when the two cars stopped at an intersection, Turner shot at the victim's car. Id. Turner testified that the victim kept raising his hand toward him as if to shoot him. Id. at 274, 476 S.E.2d at 506. Unlike in this case, there was no physical evidence in Turner to contradict Turner's statements. The victim received five gunshot wounds, two of which were lethal, and as soon as the victim's vehicle collided with a parked van, Turner drove away. Id. In the instant case, appellant's testimony that he was not aiming at the

defendant and that he was only shooting as a result of being frightened for his life cannot be reconciled with all of the undisputed physical evidence.

Since our decision in Turner, the Supreme Court of Virginia has provided more guidance to courts for determining what amounts to more than a scintilla of evidence of lesser intent. In Commonwealth v. Vaughn, the Supreme Court reversed the Court of Appeals and found that the trial court did not err in denying Vaughn's requested jury instruction for a lesser-included offense on the ground that the evidence was sufficient to support a conviction for the crime charged – and that there was no independent evidence warranting a conviction of the lesser-included offense. Vaughn, 263 Va. at 36, 557 S.E.2d at 222-23. Vaughn and the victim had been in an argument about the victim's wife. Id. at 34, 557 S.E.2d at 221. Vaughn asked a friend to come and pick him up. Id. When the friend arrived, his car was full. Id. As the car left, the victim ran toward Vaughn, and would not stop, even when Vaughn told him to do so. Id. at 34, 557 S.E.2d at 221-22. At his jury trial, Vaughn testified that he shot toward the ground at the victim's feet because he was afraid for his life, but that he did not intend to shoot the victim. Id. at 34, 557 S.E.2d at 222. Vaughn testified that he kept squeezing the trigger until there were no more bullets. Id. Vaughn also testified that he was afraid because of "the 'lethal' nature" of the victim's hands, and because of the great size disparity between himself and the victim (the victim was ten inches taller than Vaughn and weighed almost twice as much as he). Id. No one observed Vaughn shoot the victim as the victim was subsequently running away. Id. However, the evidence showed that the victim received bullet wounds to both his foot and his lower back.

The Court found that there was "no evidence supporting the jury instruction requested by Vaughn" on a lesser-included offense. The Court ultimately concluded that Vaughn's failure to provide an alternative explanation for the resulting gunshot wound to the victim's back would

require the jury to deny "the uncontroverted physical evidence and accept[] Vaughn's failure to explain what occurred as affirmative evidence of lesser intent." Id. at 36, 557 S.E.2d at 223; see also Leal, 265 Va. at 147, 574 S.E.2d at 288 (reversing the Court of Appeals and finding that the trial court was correct that Leal was not entitled to a jury instruction for a lesser-included offense because "the undisputed evidence of the victim's massive injuries is inconsistent with defendant's version of the facts and his claim that he only intended to act as an arbiter during the affray").

Likewise here, appellant testified that he shot the victim by pointing the gun in the victim's *general direction* as appellant ran away out of panic and fear. However, appellant also did not dispute the evidence that he shot at the victim ten times and that *all ten bullets struck the victim – three of which were fatal shots to the back.* The number of shots, the severity of the wounds from the shots, and the fact that the majority of the shots struck the victim while his back was turned all support the conclusion that the victim was shot down – not because appellant was randomly shooting toward the victim while overcome with fear – but because appellant deliberately and repeatedly aimed and fired at the victim in a clear-headed effort to kill him. In this case, a finding of voluntary manslaughter "by the jury in these circumstances would require denying the uncontroverted physical evidence and accepting [appellant's] failure to explain what occurred as affirmative evidence of lesser intent." Vaughn, 263 Va. at 36, 557 S.E.2d at 223. Consequently, based on our review of the totality of the facts adduced at trial, we find that there was not more than a scintilla of evidence that appellant was acting in the heat of passion.[3] Thus,

---

[3] The Commonwealth argues in the alternative that, when the jury found appellant guilty of *maliciously* shooting into an occupied vehicle – after being given a jury instruction that included the option of finding him guilty of *unlawfully* shooting into an occupied vehicle, the jury conclusively rejected appellant's contention that he was acting without malice. See Turner, 23 Va. App. at 270, 476 S.E.2d at 504 (recognizing that "[m]alice and passion cannot coexist"). We decline to address this argument because we resolve the case on the narrowest and best

- 12 -

we hold that the circuit court did not err by finding that appellant was not entitled to a jury instruction on voluntary manslaughter.

### III. CONCLUSION

Given the Supreme Court decisions in <u>Vaughn</u>, <u>McClung</u>, and <u>Leal</u>, this Court holds that the circuit court did not err when it denied appellant's request for a jury instruction on voluntary manslaughter.  Appellant's testimony, when viewed in the context of all of the evidence, simply does not amount to more than a scintilla of evidence of appellant's heat of passion being the reason for the victim's death, given the ten gunshot wounds to his body – many of which were fired from behind the victim.  Accordingly, we affirm appellant's conviction for second-degree murder in violation of Code § 18.2-32.

<u>Affirmed.</u>

---

grounds available.  <u>See</u> <u>Commonwealth v. Swann</u>, 290 Va. 194, 196, 776 S.E.2d 265, 267 (2015) ("The doctrine of judicial restraint dictates that we decide cases '"on the best and narrowest grounds available."'" (quoting <u>McGhee v. Commonwealth</u>, 280 Va. 620, 626 n.4, 701 S.E.2d 58, 61 n.4 (2010))).