COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:   Chief Judge Decker, Judges Humphreys and Friedman
Argued at Lexington, Virginia


JAMES WILLIAM KING

MEMORANDUM OPINION* BY
v.        Record No. 0984-21-3          JUDGE FRANK K. FRIEDMAN
AUGUST 23, 2022

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF AMHERST COUNTY
Michael T. Garrett, Judge

(Craig P. Tiller, on briefs), for appellant.  Appellant submitting on
briefs.

Leanna C. Minix, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.


Following a bench trial, the Circuit Court of Amherst County convicted James William

King on one count of malicious wounding, in violation of Code § 18.2-51.  Appellant argues on

appeal that the evidence was insufficient to prove he acted with the requisite intent to establish the

charge.  He further asserts that the trial court should have ruled that he acted in the heat of passion.

For the following reasons, we affirm.

BACKGROUND

"Under well-settled principles of appellate review, we consider the evidence presented at

trial in the light most favorable to the Commonwealth, the prevailing party below." *Vay v.*

*Commonwealth*, 67 Va. App. 236, 242 (2017) (quoting *Smallwood v. Commonwealth*, 278 Va. 625,

629 (2009)).  "This principle requires us to 'discard the evidence of the accused in conflict with that

of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

and all fair inferences to be drawn therefrom.'" *Id.* (quoting *Parks v. Commonwealth*, 221 Va. 492, 498 (1980)).

<u>The Confrontation:  The Victim, Cosby's Version</u>

On May 6, 2020, Tracey Cosby was at the home of appellant's sister-in-law, Anna Rose, in Amherst County.  Earlier in the day, Cosby had a "negative interaction" with Jennifer Branham at a gas station.  Cosby and Branham shared a long-standing conflict between them that one witness described as a feud.  After lunch, Cosby took a nap and was roused sometime later by a knock at the door.  When she opened the door, she saw appellant, King, who stated:  "there she [Branham] is, you got a problem with her, come on out here and take care of it now."

As Cosby stepped onto the front porch, she saw Branham enter the yard wielding a baseball bat.  Appellant accused Cosby of sending offensive text messages, which he tried to find on his phone while Branham stood by with the bat.  Meanwhile, Rose, the homeowner, exited the house and picked up a shovel.  When appellant could not find the alleged text messages, Cosby began cursing at appellant, and she said "nasty things" to Branham.  As Cosby walked back toward the house, she saw appellant grab the shovel out of Rose's hand.  Appellant twice struck Cosby's back with the shovel and then picked up a flowerpot and threw it at her, hitting the side of her body.  Cosby sustained bruises and a cut on her back, and she was in pain.  Four days after the attack, an orthopedist examined Cosby and determined that she had one broken, and three fractured, ribs.

<u>Rose, the Homeowner's Version</u>

Rose testified that she was in her bedroom at around 2:30 p.m. on the date of the incident, when Cosby jumped out of bed and "went flying outside after [Branham]."  Rose followed Cosby outside and stood on the porch where she saw Branham standing in the yard with a baseball bat.  Rose observed a lot of "cussing [and] carrying on" between Cosby and Branham.  Rose asked Branham to leave the property, but she refused.  Rose picked up a shovel and used it as a cane to

walk toward Cosby and Branham. Rose testified that, as Cosby turned to go back inside the house, she "mooned" appellant and "she said some ugly things." In response, appellant "jerked that shovel out [of Rose's] hand" and "whaled" Cosby in her back two times. He then threw the shovel at Cosby, blade first, which missed her. Appellant picked up a clay flowerpot and threw it at Cosby, hitting her. Rose testified that Cosby did not have a weapon at any point during this interaction, and she denied that Cosby and appellant struggled over the shovel. Rose agreed that Cosby and Branham have "a history of . . . a feud or tension between the two of them."

### Rose's Son's Version

Adrian Parrish, Rose's son, was present at the house on the day of the offense. He saw Branham and appellant enter the yard, and they cursed back and forth with Cosby. Later, he saw appellant strike Cosby once in her back with a shovel and then pick up a clay flowerpot and throw it at the porch. Parrish said that the flowerpot did not hit anyone, but just exploded after hitting the door jamb.

### Branham's Version

Testifying for appellant, Branham admitted that she was present at Rose's house during the incident, but she denied being involved. She said she picked up a bat to defend herself when Cosby came toward her and King with "a broom, a stick, or a shovel" in her hand. Branham testified that Cosby tried to swing "whatever she had in her hand" at appellant and in response, appellant "took off" after Cosby toward the porch.[1] Branham observed appellant and Cosby tussling over something and then she saw appellant throw the flowerpot. Branham said she thought Cosby might have fallen down the steps onto the railing.

---

[1] Cosby denied ever handling the shovel.

- 3 -

<u>Appellant, King's Version</u>

Appellant testified that on the day of the offense he went to Rose's house to speak to Parrish about the incident that occurred at the gas station earlier in the day. Rose and Cosby answered the door but would not let him speak to Parrish. As he was leaving, he saw Branham entering the property with a bat. Rose and Cosby told Branham to get off the property. Rose then allegedly gave Cosby a shovel and told her to hit appellant with it. Appellant grabbed the shovel, and they tussled over it until Cosby released it. When Cosby "mooned" appellant, he chased her with the shovel. He swung it from side to side, but he denied that he hit her with it or threw it at her. Instead, appellant said Cosby took the shovel from him and then "fell back into the rail." He admitted he threw the flowerpot onto the porch because he was mad.

<u>The Fact-Finder Convicts King of Malicious Wounding</u>

King made a motion to strike at the conclusion of the Commonwealth's case, arguing the Commonwealth's witnesses were incredible and their accounts inconsistent. The trial court denied the motion. After appellant rested his case, he made another unsuccessful motion to strike, arguing again that the Commonwealth's witnesses were not credible and asking the trial court to accept his version of events. He also argued that the evidence failed to prove he acted with malice. Appellant asserted that "whether it's self-defense or not, there's mutual physicality going back and forth," and therefore, the trial court should find him not guilty. The trial court disagreed with appellant's assertions, resolved all conflicts in the testimony and found appellant guilty of malicious wounding. Appellant noted his appeal.

ANALYSIS

I. <u>The fact-finder's conclusion that King acted with the requisite malice is supported by the record.</u>

Appellant asserts that the evidence was insufficient to prove he acted with malice. "When reviewing the sufficiency of the evidence, '[t]he judgment of the trial court is presumed correct and

will not be disturbed unless it is plainly wrong or without evidence to support it.'" *McGowan v. Commonwealth*, 72 Va. App. 513, 521 (2020) (alteration in original) (quoting *Smith v. Commonwealth*, 296 Va. 450, 460 (2018)). "In doing so, an appellate court 'discard[s] the evidence of the accused in conflict with that of the Commonwealth, and regard[s] as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom.'" *Fletcher v. Commonwealth*, 72 Va. App. 493, 501 (2020) (alterations in original) (quoting *Kelley v. Commonwealth*, 289 Va. 463, 467-68 (2015)). This Court "does not ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" *Id.* (quoting *Secret v. Commonwealth*, 296 Va. 204, 228 (2018)). "Rather, the relevant question is whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Vasquez v. Commonwealth*, 291 Va. 232, 248 (2016) (quoting *Williams v. Commonwealth*, 278 Va. 190, 193 (2009)). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" *McGowan*, 72 Va. App. at 521 (quoting *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018)).

Malice is "the doing of a wrongful act intentionally, or without just cause or excuse, or as a result of ill will." *Watson-Scott v. Commonwealth*, 298 Va. 251, 255-56 (2019) (quoting *Dawkins v. Commonwealth*, 186 Va. 55, 61 (1947)). "A common theme running through [the definitions of malice] is a requirement that a wrongful act be done wilfully or purposefully." *Williams v. Commonwealth*, 64 Va. App. 240, 248 (2015) (alteration in original) (quoting *Avent v. Commonwealth*, 279 Va. 175, 202 (2010)). "Whether or not an accused acted with malice is generally a question of fact and may be proved by circumstantial evidence." *Palmer v. Commonwealth*, 71 Va. App. 225, 237 (2019) (quoting *Canipe v. Commonwealth*, 25 Va. App. 629, 642 (1997)). "Indeed, '[m]alice is implied by law from any deliberate, willful, and cruel act against

another, however sudden.'" *Witherow v. Commonwealth*, 65 Va. App. 557, 566 (2015) (quoting *Epperly v. Commonwealth*, 224 Va. 214, 231 (1982)). "Malice may 'be inferred from the deliberate use of a deadly weapon.'" *Doss v. Commonwealth*, 23 Va. App. 679, 686 (1996) (quoting *Perricllia v. Commonwealth*, 229 Va. 85, 91 (1985)).

"'The fact finder, who has the opportunity to see and hear the witnesses, has the sole responsibility to determine their credibility' as well as 'the weight to be given their testimony.'" *Kelley v. Commonwealth*, 69 Va. App. 617, 626 (2019) (quoting *Hamilton v. Commonwealth*, 279 Va. 94, 105 (2010)). Here, the trial court accepted Cosby's testimony and rejected appellant's version of the events.

We find that the evidence sufficiently supports the fact-finder's conclusion that appellant acted with malice. Indeed, Cosby, Rose, and Parrish all testified that appellant struck Cosby in the back with the shovel after a heated argument. Cosby was hit as she headed back toward the house, away from appellant. While Parrish only saw appellant hit Cosby once, Cosby and Rose testified that he struck her twice. Appellant hit Cosby so hard in the back that she was in pain for four days before going to the orthopedic surgeon where she learned that she had one broken, and three fractured, ribs.

Appellant himself admitted he swung the shovel at Cosby because he was mad. He also admitted he threw the flowerpot. The trial court found that the photographs of Cosby's injuries were consistent with her version of events. Finally, there was a history of animosity between Branham and Cosby, in which appellant was involved.

On these facts, it is clear that appellant acted purposefully, and with ill will, when he (out of anger) struck Cosby so hard with the shovel that he cracked her ribs. The fact-finder may infer that the assailant "intends the natural and probable consequences of his acts." *Adams v. Commonwealth*, 33 Va. App. 463, 471 (2000) (quoting *Campbell v. Commonwealth*, 12 Va. App. 476, 484 (1991)

(*en banc*)).  The trial court's finding that appellant acted with the requisite level of malice was amply supported by the evidence.

    II.   <u>The fact-finder's refusal to adopt self-defense or "heat of passion" defenses was not error.</u>

"No ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable this Court to attain the ends of justice."  Rule 5A:18.  "The purpose of this contemporaneous objection requirement is to allow the trial court a fair opportunity to resolve the issue at trial, thereby preventing unnecessary appeals and retrials."  *Creamer v. Commonwealth*, 64 Va. App. 185, 195 (2015).  "Pursuant to the rule, 'a specific argument must be made to the trial court at the appropriate time, or the allegation of error will not be considered on appeal.'"  *Ray v. Commonwealth*, 74 Va. App. 291, 306 (2022) (quoting *Edwards v. Commonwealth*, 41 Va. App. 752, 760 (2003) (*en banc*)).  "Not just any objection will do.  It must be both *specific* and *timely* — so that the trial judge would know the particular point being made in time to do something about it."  *Bethea v. Commonwealth*, 297 Va. 730, 743 (2019) (quoting *Dickerson v. Commonwealth*, 58 Va. App. 351, 356 (2011)).  "[M]aking one specific argument on an issue does not preserve a separate legal point on the same issue for [appellate] review."  *Ray*, 74 Va. App. at 306 (alterations in original) (quoting *Hicks v. Commonwealth*, 71 Va. App. 255, 266 (2019)).

In this case, appellant argued that the evidence failed to prove he acted with malice, and he asserted that the Commonwealth's witnesses were not credible and should not be believed. Appellant did not contend at trial, as he does on appeal, that he acted only in the heat of passion without time for reflection.  Instead, appellant stated, "whether it's self-defense or not, there's mutual physicality going back and forth."

The heat of passion defense "refers to the *furor brevis* which renders a man deaf to the voice of reason."  *Dandridge v. Commonwealth*, 72 Va. App. 669, 681 (2021) (quoting *Woods v.*

*Commonwealth*, 66 Va. App. 123, 131 (2016)). Heat of passion "excludes malice when provocation reasonably produces fear [or anger] that causes one to act on impulse without conscious reflection." *Id.* Whether the alleged provocation is sufficient to establish that a defendant acted in the heat of passion is "a question of fact." *Woods*, 66 Va. App. at 131-32. Here, appellant failed to argue that he was provoked by Cosby to a level of fear or anger so great that it justified his use of violence. Appellant did not even mention the concepts of "provocation," "heat of passion," "conscious reflection," "acting on impulse," or "cooling off" in the trial court. The mere statement "whether it's self-defense or not" did not provide the trial court the opportunity to rule on the specific factual questions of whether Cosby reasonably provoked him to hit her with the shovel, or if he acted on impulse.[2]

## CONCLUSION

The evidence sufficiently proved that appellant acted with malice when he struck Cosby with the shovel. Accordingly, we affirm King's conviction for malicious wounding.

*Affirmed*.

---

[2] Although there are exceptions to Rule 5A:18, appellant does not invoke them, and the Court will not apply the exceptions *sua sponte*. *Edwards*, 41 Va. App. at 761. Even if an isolated and conclusory mention of "self-defense" were sufficient to preserve appellant's arguments here, the record does not remotely support King's claims regarding "heat of passion" or self-defense.