UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present: Judges Fulton, Friedman and Raphael

WILLIAM RENO RAY

v.      Record No. 1080-22-3

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION*
PER CURIAM
APRIL 25, 2023

FROM THE CIRCUIT COURT OF THE CITY OF ROANOKE
David B. Carson, Judge

(John S. Koehler; The Law Office of James Steele, PLLC, on brief),
for appellant. Appellant submitting on brief.

(Jason S. Miyares, Attorney General; Timothy J. Huffstutter,
Assistant Attorney General, on brief), for appellee. Appellee
submitting on brief.

Following a jury trial, the trial court convicted William Reno Ray of two counts of

first-degree murder, in violation of Code § 18.2-32. Ray argues that the trial court erred in

denying his motion for continuance. He also challenges the sufficiency of the evidence. Ray

and the Commonwealth have each waived oral argument. For the following reasons, we affirm.

BACKGROUND

"In accordance with familiar principles of appellate review, the facts will be stated in the

light most favorable to the Commonwealth, the prevailing party [below]." *Poole v. Commonwealth*,

73 Va. App. 357, 360 (2021) (quoting *Gerald v. Commonwealth*, 295 Va. 469, 472 (2018)). This

standard requires us to "discard the evidence of the accused in conflict with that of the

Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and

all fair inferences to be drawn [from that evidence]." *Bagley v. Commonwealth*, 73 Va. App. 1,

---

* This opinion is not designated for publication. *See* Code § 17.1-413.

26 (2021) (alteration in original) (quoting *Cooper v. Commonwealth*, 54 Va. App. 558, 562 (2009)).

The Office of the Public Defender was appointed to represent Ray in August 2020. On defense counsel's motion, Ray was referred for a competency evaluation.[1] Trial was continued several times on Ray's motions. In October 2021, Ray retained new counsel, who was substituted into the case. In December 2021, Ray's counsel requested a continuance, telling the court that he had "looked through some of the discovery" but had not yet received all of it. The court continued the trial to March 28, 2022. In February 2022, the court sent both parties a letter stating, "[t]he court expects the case to be tried [on March 28, 2022], and continuances will not be granted absent compelling circumstances," which would not include "lack of adequate preparation."

At Ray's arraignment on March 24, 2022, the Commonwealth indicated that it was ready to proceed with trial on March 28. Ray's counsel requested a continuance for two reasons: (1) to explore how Code § 19.2-303.6[2] might apply to the case and (2) because counsel had not been able to access some of the digital discovery provided by the Commonwealth, specifically several of the witness statements. The Commonwealth responded that it had an open file policy and that

---

[1] The psychological evaluator found Ray competent to stand trial.

[2] Code § 19.2-303.6 allows the trial court to defer a finding of guilt and place the accused on probation if the court finds "by clear and convincing evidence that the criminal conduct was caused by or had a direct and substantial relationship to the" defendant's autism spectrum disorder or intellectual disability. Code § 19.2-303.6(A). Code § 19.2-303.6 does not apply to "act[s] of violence as defined in [Code] § 19.2-297.1," which includes first-degree murder. Code §§ 19.2-297.1(A)(i)(a), 19.2-303.6(A). Ray conceded at the time of his motion that the statute did not apply to first-degree murder.

The Commonwealth reasonably speculates that Ray meant to refer to Code § 19.2-271.6, which allows a defendant to present expert testimony about the defendant's diminished mental capacity provided it tends to negate the defendant's intent, is otherwise admissible, and satisfies the diagnostic criteria of a mental illness, developmental or intellectual disability, or autism spectrum disorder.

defense counsel could review the discovery at the Commonwealth's Attorney's Office at any time. The trial court denied the continuance, finding first that Code § 19.2-303.6 did not apply and second that the case had been continued many times and that defense counsel had an adequate opportunity to review the discovery.

The case went to trial on March 28, 2022. Read in the light most favorable to the Commonwealth, the evidence at trial showed the following. On March 1, 2020, Ray reported to Roanoke City Police Detective Paul Maddy that three men wearing white masks "pulled up beside him, snagged him, put him in [a] van, duct taped his hands behind his back, [and] kicked him several times" before dropping him off on the street. Ray told Detective Maddy that the men wanted to know the whereabouts of April Barnicoat's daughter, Kayleigh.[3]

Prompted by Ray's story, officers conducted a welfare check at April's apartment, where they located two dead bodies. They first found April in the upstairs bathroom with her wrists duct taped behind her back and tape around her face and neck. There was a pillowcase in the bathtub. They then located a male body, later identified as Eric Surface, in the upstairs bedroom. One of the officers described Surface's body as "[e]viscerated." Photographs of Surface's body confirm the officer's characterization. The officers began to clear the bedroom "but there was just so much blood all over the floor that [they] did[ not] want to tamper or mess up . . . the scene." The Commonwealth played body camera footage of the discovery for the jury.

April had petechial hemorrhages in her eyes and face, a laceration above her right eye, a small cut under her chin, and multiple bruises to her neck. Assistant Chief Medical Examiner Amy Tharpe[4] testified that the petechial hemorrhages were evidence of increased blood pressure

---

[3] For clarity's sake, this opinion refers to members of the Barnicoat family by their first names.

[4] Dr. Tharpe testified about the autopsy performed by then-Assistant Chief Medical Examiner Gayle Suzuki, who is no longer with the medical examiner's office.

in the head and that fractured cartilage in April's neck demonstrated "direct force applied to the neck." The cause of death was asphyxia due to strangulation. Dr. Tharpe testified that most asphyxia deaths require three to five minutes of oxygen deprivation before death occurs.

Surface sustained 17 incised wounds and 3 stab wounds. An incised wound is "[k]ind of like a surgical incision" but "the wound is longer on the skin and then it goes deep into the body." A stab wound is a wound that goes deeper into the body than it is long on the skin. The maximum depth of the wounds was two and a quarter inches. Dr. Tharpe testified that Surface had "a complex cut" on his neck, meaning that it appeared to be "multiple cuts overlapping as opposed to one single cut." That cut went one and a half inches deep, severed Surface's carotid artery and jugular veins, and killed him.

The police reviewed security footage from businesses in the area in which Ray claimed to have been abducted but were unable to corroborate his claims. Detective Maddy interviewed Ray again on March 4, 2020. This time, Ray stated that four men in a van pulled up alongside him, coerced him into the van, duct taped him, and asked him questions about Surface, rather than Kayleigh. They then drove the van to Surface's apartment, and two of the men went inside while the others waited outside for several hours before leaving the scene. Once again, surveillance footage from the area did not corroborate Ray's story.

Four months later, in July 2020, Ray voluntarily went to the police department and reported that he was "turning [him]self in . . . [f]or the murder of Eric Surface and April." His subsequent confession was recorded and transcribed; the Commonwealth played the recording at trial and provided the transcript to the jury.[5] Ray explained that he was dating April's daughter, Alexys Barnicoat ("Lexi"). On March 1, 2020, Ray went to confront April about what Ray

_____

[5] Detective Maddy read Ray his rights under *Miranda v. Arizona*, 384 U.S. 436 (1966), after Ray confessed, and Ray then repeated his confession.

- 4 -

perceived as April's mistreatment of Lexi and disapproval of Ray. Surface—April's boyfriend—unexpectedly arrived and demanded to know why Ray was there. Ray and Surface "got into it"; they "were arguing" and it escalated into "a shoving match." According to Ray, while they were in the upstairs bedroom, Surface "kept on trying to push" Ray and then "swung at" him.[6] Ray told Detective Maddy that, as if by "reflex" or "instinct," Ray pulled out a foldable pocket knife, "slashed [Surface] and . . . slashed him good" in the chest, and then kept cutting and stabbing him. Ray admitted that he "knew it wasn't right, it was awful, it was monstrous," but claimed that, "in [his] mind, there was no going back" so he "kept on doing it" while Surface "kept on telling [Ray] to stop." Ray claimed that he acted out of "adrenaline and fear." He admitted to stabbing Surface "at least 15 or 20" times.

Ray then "tie[d April] up with duct tape" he found in the room while he contemplated whether to call the police, run and "just try to lie and play it off," or kill April. He put duct tape on April's mouth and hands and "accidentally" stabbed her while he "was threatening her to keep her quiet." Surface was "on the floor bleeding to death" during this period, though it is not clear how much longer he lived. Ray and April were in the bedroom "for about an hour" while Ray deliberated. Ray admitted that he "was more calm" by that point and that "[a]fter [he] calmed down," he decided that he could not leave witnesses because it "would come back to Lexi" and "ruin what [they] had." He resolved to drown April, knowing "it was evil" but believing that "it was the easiest and kindest way to" kill her. Ray put a pillowcase over April's head, walked her to the bathroom, filled the bathtub with water, and held her head under the water until she died.

---

[6] Surface's aunt testified that when Surface was 24 years old, he suffered a back injury in a truck accident that left him unable to stand for prolonged periods of time or lift heavy items. Surface was 5 feet and 4 inches tall and weighed around 250 pounds.

After trying to clean the scene, Ray put the used cleaning supplies, duct tape, and knife in a backpack which he then threw into a dumpster. He admitted to concocting the abduction story and claimed that he did it so that the police would find Surface and April's bodies before Kayleigh did. Surveillance footage confirmed that Ray was near April's apartment on the night of the murders.

Ray presented no evidence but argued that he was, at most, guilty of voluntary manslaughter as to Surface and second-degree murder as to April. The jury convicted Ray of two counts of first-degree murder. The trial court sentenced him to 80 years' imprisonment with 30 years suspended. Ray appeals.

## ANALYSIS

### I. Denial of Continuance

Ray first argues that the trial court abused its discretion by denying his continuance motion. "[A] motion for a continuance is within the sound discretion of the circuit court and must be considered in view of the circumstances unique to each case." *Bailey v. Commonwealth*, 73 Va. App. 250, 259 (2021) (quoting *Haugen v. Shenandoah Valley Dep't of Soc. Servs.*, 274 Va. 27, 34 (2007)). "A party challenging a circuit court's denial of a motion for a continuance must demonstrate both an 'abuse of discretion *and* resulting prejudice.'" *Id.* at 265 (quoting *Haugen*, 274 Va. at 34).

We need not address whether the trial court abused its discretion because Ray has not demonstrated prejudice, arguing only that "[r]equiring a defendant to proceed to trial where his counsel has averred to the court that he is not prepared is self-evidently prejudicial." We disagree. Ray moved for a continuance so that he could review the applicability of Code § 19.2-303.6 and have more time to review discovery. These justifications are unavailing in this case. First, by its plain terms, Code § 19.2-303.6 does not apply to the crime of first-degree

murder, and Ray does not argue otherwise on appeal.[7]  Second, Ray does not identify what additional arguments he would have made had he been given more time to review discovery. Considering that defense counsel had four additional days to review discovery after the court denied his continuance motion, it is not even clear what discovery he was unable to review by the trial date or how that discovery might have affected his defense.  Accordingly, Ray has not established that the trial court's denial of his continuance motion prejudiced him in any way.

## II.  Sufficiency of the Evidence

Ray next challenges the sufficiency of the evidence supporting his convictions.  "On review of the sufficiency of the evidence, 'the judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it.'"  *Ingram v. Commonwealth*, 74 Va. App. 59, 76 (2021) (quoting *Smith v. Commonwealth*, 296 Va. 450, 460 (2018)).  "The question on appeal, is whether 'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'"  *Id.* (quoting *Yoder v. Commonwealth*, 298 Va. 180, 182 (2019)).  "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'"  *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018) (quoting *Banks v. Commonwealth*, 67 Va. App. 273, 288 (2017)).

"In Virginia, every unlawful homicide is presumed to be murder of the second degree." *Tizon v. Commonwealth*, 60 Va. App. 1, 10-11 (2012).  To elevate the charge to first-degree murder, the Commonwealth must prove that the defendant committed a "willful, deliberate, and premeditated killing."  *Castillo v. Commonwealth*, 70 Va. App. 394, 416 (2019) (quoting Code § 18.2-32).  "Premeditated murder . . . contemplates: (1) a killing; (2) a reasoning process antecedent to the act of killing, resulting in the formation of a specific intent to kill; and (3) the

---

[7] Ray also makes no argument concerning Code § 19.2-271.6.

performance of that act with malicious intent." *Fields v. Commonwealth*, 73 Va. App. 652, 674 (2021) (quoting *Rhodes v. Commonwealth*, 238 Va. 480, 486 (1989)). "Because 'premeditation and formation of an intent to kill seldom can be proved by direct evidence, a combination of circumstantial factors may be sufficient.'" *Id.* (quoting *Aldridge v. Commonwealth*, 44 Va. App. 618, 655 (2004) (alterations omitted)). The intention to kill "need not exist for any specified length of time prior to the actual killing." *Kirby v. Commonwealth*, 50 Va. App. 691, 700 (2007) (quoting *Remington v. Commonwealth*, 262 Va. 333, 352 (2001)). Rather, "the design to kill may be formed only a moment before the fatal act is committed provided the accused had time to think and did intend to kill." *Id.* (quoting *Remington*, 262 Va. at 352).

On the other hand, "[t]o reduce a homicide from murder to voluntary manslaughter, the killing must have been done in the heat of passion and upon reasonable provocation." *Dandridge v. Commonwealth*, 72 Va. App. 669, 681 (2021) (alteration in original) (quoting *Canipe v. Commonwealth*, 25 Va. App. 629, 643 (1997)). "Heat of passion" is that "which renders a man deaf to the voice of reason" and "excludes malice when provocation reasonably produces fear that causes one to act on impulse without conscious reflection." *Id.* (internal citations omitted). Whether provocation is sufficient to rebut the presumption of malice is a question of fact to be decided by the jury. *Id.* at 682 (citing *Woods v. Commonwealth*, 66 Va. App. 123, 131-32 (2016)). "[I]t is also a question of fact whether the defendant committed the homicide before or after his passion had cooled." *Id.* (quoting *Miller v. Commonwealth*, 5 Va. App. 22, 26 (1987)). Words alone do not constitute provocation sufficient to negate the element of malice. *Washington v. Commonwealth*, 75 Va. App. 606, 620 (2022).

A reasonable fact finder could reject Ray's voluntary manslaughter argument and conclude that his killing of Surface constituted first-degree murder. Even if the jury credited Ray's claim that Surface was pushing and punching Ray, it could reject Ray's claim that

Surface's actions were so egregious to provoke Ray to "eviscerate" Surface with 20 separate wounds. Moreover, the jury could conclude from the number of Surface's knife wounds, the extreme brutality with which Ray inflicted them, and the fact that Ray continued to attack Surface while Surface begged him to stop, that Ray formed the specific intent to kill Surface before delivering the killing blow.

Further, a reasonable fact finder could conclude that Ray committed first-degree murder when he killed April. Ray argues that he "was acting under the strain of the moment," but he admitted in his confession that he had "calmed down" before deciding to kill April and that he made the conscious choice to kill her after deliberating for about an hour. A reasonable jury could easily find premeditation on these facts. Accordingly, sufficient evidence supports both of Ray's convictions.

## CONCLUSION

For the foregoing reasons, we affirm the judgment of the trial court.

*Affirmed.*