COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:   Judges Fulton, Causey and Bernhard
Argued at Norfolk, Virginia


LAMONT SMALLWOOD, S/K/A
  LAMONT S. SMALLWOOD

                                                      MEMORANDUM OPINION[*] BY
v.      Record No. 1892-23-1                          JUDGE DAVID BERNHARD
                                                      JUNE 10, 2025

COMMONWEALTH OF VIRGINIA


                FROM THE CIRCUIT COURT OF THE CITY OF NORFOLK
                            Robert B. Rigney, Judge

        Trevor Jared Robinson for appellant.

        Aaron J. Campbell, Assistant Attorney General (Jason S. Miyares,
        Attorney General, on brief), for appellee.


        Lamont Smallwood appeals his conviction by jury of murder in the second degree and use

of a firearm in the commission of a felony.  The trial court sentenced Smallwood to a total of 25

years and 9 months' incarceration.  On appeal, Smallwood assigns error to the trial court's denial of

his motion to strike.  He contends the evidence was insufficient as a matter of law to sustain each

conviction.  For the reasons that follow, this Court finds the trial court was not plainly wrong in

denying Smallwood's motion and that there is sufficient evidence to support his convictions.  Thus,

the trial court's judgment is affirmed.

                                        BACKGROUND

        "In accordance with familiar principles of appellate review, the facts will be stated in the

light most favorable to the Commonwealth, the prevailing party at trial."  *Gerald v. Commonwealth*,

295 Va. 469, 472 (2018) (quoting *Scott v. Commonwealth*, 292 Va. 380, 381 (2016)).  "In doing so,

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

we discard any of appellant's conflicting evidence and regard as true all credible evidence favorable to the Commonwealth and all inferences that may reasonably be drawn from that evidence." *McGowan v. Commonwealth*, 72 Va. App. 513, 516 (2020).

On May 29, 2022, while on duty, Norfolk Police Detective Kyle Austin heard 911 callers report that someone was shot in an apartment building. Detective Austin activated the live feed of the building's surveillance cameras from his phone and saw "a young man in a state of undress bleeding profusely." The victim, later identified as Paul Robinson, died at the scene.

The jury reviewed portions of the surveillance camera recordings in tandem with Detective Austin's testimony. The recordings are silent, and certain vantage points are obscured by the awning located at the front of the building.

One of the videos established that at around 9:20 p.m., a vehicle pulled into the parking lot of the apartment building, and a man wearing blue shorts and a white T-shirt exited the vehicle, carrying what appeared to be "a long gun or assault rifle." Detective Austin identified the weapon based on its shape, features, and positioning on the man's person. The man walked away from the vehicle and outside of the camera's view. About 15 minutes later, the man returned with the firearm and entered the vehicle from the driver's side. He sat in the vehicle for some time before departing at 9:50 p.m. An hour later, the man returned in the same vehicle, this time exiting from the passenger's side. Ladrea West testified that she loaned her gold Nissan Murano to Lamont Smallwood, or "Bud," on the day of the shooting. The two had been seeing each other for a couple of months. She identified her vehicle in the video by its color and the stickers located on the gas tank cover and back window.

Another video covered the right side of the apartment building. In the video, a man wearing a chain, black pants, and "red around his waist" walked inside the apartment complex, carrying what appeared to be a cellphone. "When [the man in red] came back out, he stood next to [the man

- 2 -

in the blue shorts] and talked to him." The man in the blue shorts then turned to face the man in red; he pulled a "firearm" from the waistline of the man in red, handing it to an individual wearing jeans and a white beanie. As he did this, the man in the blue shorts, later identified as Smallwood, appeared to have a firearm in his other hand. Less than a minute later, the man in red was knocked to the ground. A man in white shorts and a navy blue and black striped shirt, later identified as Robert Hollowell or "Capone," came into the camera's view. He appeared to be holding a chain or necklace. Hollowell inspected the chain and handed it "to a man wearing a black baseball hat, who then dropped the necklace to the ground."

The video also showed the man in red "undressing" himself. He took off his pants and stood in front of the man in the blue shorts. According to Detective Austin, from the video, "you see [the man in the blue shorts] bringing what appears to be a firearm up to the front of him. You see everybody else react, shrinking away, dropping back, flinching, and immediately leaving the scene." The individual with the white beanie was holding the gun Smallwood had given him; however, the gun was "pointing down to his side" when the man in red was shot. Shortly thereafter, the victim fell to his knees; he attempted to get up and walk before collapsing in the parking lot. Detective Austin recalled activating the live feed from his phone after this encounter. He identified the man with "red around his waist" as Paul Robinson or "Little Paul." When shown this video during her testimony, West identified Smallwood as the man in the blue shorts and the white T-shirt.

The final video displayed the same footage from the original angle of the front side of the building. The man in the blue shorts can be seen transferring a "firearm" from his left hand to his right hand. "After [the man in red] was shot, [the man in the blue shorts] stood over a fallen [victim] and said something to him." The man in the blue shorts then returned to the "same vehicle he came in" with a "firearm" in his right hand.

- 3 -

Norfolk Police Officer Emily McFarlin attested to observing Robinson lying face down on the pavement upon arrival at the scene. She rolled Robinson onto his back, checked for a pulse, and began to administer chest compressions, to no avail. Dr. Nicole Mazian performed the autopsy of Robinson and opined that Robinson died from gunshot wounds to the left neck and shoulder.

Detective Alberta Llosa testified that she took pictures of the crime scene, collected physical evidence, and assessed the recovered items for fingerprints. She recovered 13 items, including 2 cellphones marked with "red stain[s]" and "a Virginia ID card with the name of Mr. Paul Robinson." Detective Llosa found two cartridges in the left and right pockets of the black sweatpants belonging to Robinson and a 9-millimeter Luger cartridge case "on the grass area next to the front door." Both phones were determined to be owned by Robinson. A latent print from one of the cellphones was determined to match "the left index finger" of Smallwood.

Detective Darrick Davis tracked down the owner of the vehicle, Ladrea West, from the surveillance footage. After speaking with West, he secured warrants for Smallwood's arrest and the search of West's vehicle. Forensics Investigator Douglas Frazier executed the search warrant on West's vehicle. He recovered several items, including one FC 9mm Luger cartridge (an unspent round). None of these items were submitted for latent prints.

Two witnesses for the Commonwealth, inmates Andre Barnes and Gerald Jenkins, refused to testify at trial. Despite multiple attempts to secure his testimony, Jenkins refused to come into the courtroom. The Commonwealth introduced a jail video call between Smallwood and Hollowell, the individual wearing the black striped shirt in one of the parking lot surveillance videos introduced at trial. In the video call, Smallwood stated "Dray" and "G.K." "jumped on [his] case." He learned this from a "p-dub." Smallwood also stated, "Rose got a movie ticket" for "8K." Rose is not further identified in the record.

Norfolk Sheriff's Office Sergeant Robert Cleek served in the security threat unit during the investigation. Sergeant Cleek testified that he was "familiar" with Smallwood and identified him and Hollowell as the speakers on the call. He further testified that "p-dub" was a "way to say paperwork" and that "[i]f your name is on the paperwork as a cooperating witness, then you're looked at as a snitch." After reviewing the call twice, Sergeant Cleek determined that "movie ticket" and "8K" meant a "gang hit [was] placed on Gerald Jenkins." As a precaution, Sergeant Cleek transferred Smallwood to another floor in the jail. Smallwood later showed Sergeant Cleek "the piece of paper with Gerald Jenkins' name on it." After confirming the information, Cleek "immediately requested a transfer for Gerald Jenkins to leave the facility." Sergeant Cleek also informed the "intel guy" at the Virginia Beach City Jail about what he had heard. Cleek conceded that he had never heard the term "movie ticket" before this call.

After the Commonwealth had rested, Smallwood moved to strike the evidence for failure to establish a prima facie case. Smallwood conceded his presence at the scene of the shooting but argued that the testimony and surveillance video footage did not prove that he shot Robinson. The trial court denied the motion. Smallwood presented no physical evidence or testimony in his defense. The jury found Smallwood guilty, and he was sentenced to 20 years and 9 months for the murder conviction and 5 years for the use of a firearm conviction. This appeal followed.

ANALYSIS

"When reviewing the sufficiency of the evidence, '[t]he judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it.'" *Smith v. Commonwealth*, 296 Va. 450, 460 (2018) (alteration in original) (quoting *Commonwealth v. Perkins*, 295 Va. 323, 327 (2018)). The appellate court "does not 'ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" *Perkins*, 295 Va. at 327 (quoting *Williams v. Commonwealth*, 278 Va. 190, 193 (2009)).

"'Rather, the relevant question is,' upon review of the evidence in the light most favorable to the prosecution, 'whether *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Id.* (quoting *Pijor v. Commonwealth*, 294 Va. 502, 512 (2017)). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018) (quoting *Banks v. Commonwealth*, 67 Va. App. 273, 288 (2017)).

This case hinges on circumstantial evidence. This Court has stated before that "in an appellate court's assessment of a sufficiency challenge, circumstantial evidence 'is as competent . . . as direct evidence' to prove the elements of a crime, 'provided it is sufficiently convincing to exclude every reasonable hypothesis except that of guilt.'" *Coglio v. Commonwealth*, No. 1313-22-1, slip op. at 7, 2023 Va. App. LEXIS 814, at *10-11 (Dec. 5, 2023) (alteration in original) (quoting *Young v. Commonwealth*, 70 Va. App. 646, 653 (2019)); *see also Wright v. Commonwealth*, 292 Va. 386, 397 (2016) (The Commonwealth must "overcome the presumption of innocence and exclude all reasonable conclusions inconsistent with that of guilt." (quoting *LaPrade v. Commonwealth*, 191 Va. 410, 418 (1950))).

Smallwood does not dispute his presence at the scene nor the surveillance video's depiction of his "holding what appeared to be a handgun both before and after Robinson was shot." Rather, he posits that these circumstances only create a suspicion he shot Robinson. Further, citing to *Moran v. Commonwealth*, 4 Va. App. 310, 314 (1987), Smallwood emphasizes another individual "was observed to be carrying a firearm prior to the shooting," and the assailant was not definitively captured as the surveillance video footage was obstructed by the building's awning. These arguments are unpersuasive because "on appeal, [Smallwood] has a greater task for he must establish that no 'rational trier of fact could have found' that he acted

with malice." *Meade v. Commonwealth*, 74 Va. App. 796, 814-15 (2022) (quoting *Secret v. Commonwealth*, 296 Va. 204, 228 (2018)).

Additionally, it is well settled that "[t]he reasonable-hypothesis principle 'merely echoes the standard applicable to every criminal case.'" *Commonwealth v. Moseley*, 293 Va. 455, 464 (2017) (quoting *Vasquez v. Commonwealth*, 291 Va. 232, 250 (2016)). The principle is "simply another way of stating that the Commonwealth has the burden of proof beyond a reasonable doubt." *Id.* (quoting *Commonwealth v. Hudson*, 265 Va. 505, 513 (2003)). "Therefore, no matter how this burden is framed, the factfinder ultimately remains responsible for weighing the evidence." *Id.* This includes video evidence. *See Meade*, 74 Va. App. at 806 ("[W]e, on appellate review, view video evidence not to determine what we think happened, but for the limited purpose of determining whether any rational factfinder could have viewed it as the trial court did."). "In that capacity, the factfinder determines which reasonable inferences should be drawn from the evidence, and whether to reject as unreasonable the hypotheses of innocence advanced by a defendant." *Moseley*, 293 Va. at 464.

Murder in the second degree "is defined as a malicious killing." *Woods v. Commonwealth*, 66 Va. App. 123, 131 (2016). "Malice is evidenced either when the accused acted with a sedate, deliberate mind, and formed design, or committed any purposeful and cruel act without any or without great provocation." *Id.* (quoting *Branch v. Commonwealth*, 14 Va. App. 836, 841 (1992)). "Every unlawful homicide is presumed to be murder in the second degree." *Elliot v. Commonwealth*, 30 Va. App. 430, 436 (1999). "The trier of fact may infer malice from the deliberate use of a deadly weapon unless the evidence raises a reasonable doubt whether malice existed." *Id.* Code § 18.2-53.1 states, in relevant part, "It shall be unlawful for any person to use or attempt to use any pistol, shotgun, rifle, or other firearm or display such weapon in a threatening manner while committing or attempting to commit murder."

This Court cannot say, as a matter of law, that no rational factfinder could have found Smallwood guilty. Witness testimony and fingerprint results place Smallwood at the scene of the crime. Further, the Commonwealth presented evidence of Smallwood's position relative to Robinson, Smallwood's behavior with a firearm moments before the shooting, and the onlookers' reactions to support this conviction. The surveillance video footage shows Smallwood removing a firearm from Robinson's waistline with one hand while continuing to hold a firearm in the other. Moments later, Robinson is knocked down to the ground. The video footage shows Smallwood transferring the firearm from his left hand to his right hand and bringing it up to Robinson. At the time of the actual shooting, the only other individual with a firearm had his weapon pointed downward rather than at Robinson. The jury could reasonably find from the evidence presented that Smallwood took Robinson's weapon, started a physical confrontation with him, and then shot him. Accordingly, the evidence introduced at trial was sufficient to convict Smallwood of murder in the second degree and use of a firearm in the commission of a felony.

## CONCLUSION

For the foregoing reasons, the trial court did not err in denying Smallwood's motion to strike the Commonwealth's evidence. The judgment of the trial court is affirmed.

*Affirmed.*