COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:   Chief Judge Decker, Judges Humphreys and AtLee
Argued by videoconference


MICHAEL WAYNE KELLER

                                                    MEMORANDUM OPINION* BY
v.        Record No. 0740-20-1              JUDGE RICHARD Y. ATLEE, JR.
                                                    MAY 18, 2021

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF NEWPORT NEWS
Gary A. Mills, Judge

Taite A. Westendorf (Westendorf & Khalaf, PLLC, on briefs), for
appellant.

Virginia B. Theisen, Senior Assistant Attorney General (Mark R.
Herring, Attorney General, on brief), for appellee.


Michael Wayne Keller appeals his convictions for aggravated malicious wounding in

violation of Code § 18.2-51.2(A) and use of a firearm in the commission of a felony in violation

of Code § 18.2-53.1. He assigns two errors on appeal. First, he argues that the trial court erred

by granting Jury Instruction 14 because it was confusing and misleading. Second, he argues that

the evidence was insufficient as a matter of law to prove that he acted with malice rather than in

the heat of passion. We disagree and affirm Keller's convictions.

I. BACKGROUND

On appeal, we view the evidence in the light most favorable to the Commonwealth, the

prevailing party below, and afford to it all reasonable inferences from that evidence. Yerling v.

Commonwealth, 71 Va. App. 527, 530 (2020).

_____
* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

On May 15, 2019, Keller spent the afternoon drinking at the Sands Bar in Newport News. Megan Hodges, his on-off girlfriend and the mother of his child, met him there. Around 10:00 p.m., they, along with Tony Robinson, drove to Hoss's Deli. They arrived around 10:30 p.m.

Inside Hoss's Deli, they ordered some drinks and took pictures together using Hodges' phone. Keller happened to look at the phone and see some recent messages from other men. He became angry and confronted Hodges about them, and an argument ensued. When Hodges left the bar and walked to her car, which was parked in the overflow parking lot, Keller followed her. He got into her car, and they continued arguing. The argument escalated, becoming very loud and heated. Robinson came out to try and take Keller back into the bar. As Keller was walking back to the bar, Hodges said something, and Keller walked back and kicked the fender of her car. Hodges got out of the car, and they continued arguing.

Steven Barton and his friend Brandon Hannaman were standing outside in the parking lot. They witnessed the argument and saw Keller kick Hodges' car. Barton did not know either Hodges or Keller, but he was concerned for Hodges' safety when he saw Keller go back towards her car. Barton called out to Keller. He told him not to talk to Hodges in that manner and to leave her alone. Amy Howard, who was sitting in her car at the time, testified that Barton was trying to defuse the situation and that his demeanor was not threatening or aggressive at all. Hannaman testified that Barton was raising his voice, but he was not aggressive.

Hannaman heard Keller respond to Barton saying he would "blow his fucking head off" before he pulled out a gun and fired. Hannaman saw Keller shoot once at Barton and then shoot into the air several times. Other witnesses heard several gunshots. One shot struck Barton in the head, and he fell to the ground.

Keller ran from the parking lot. The bouncer from Hoss's Deli chased him for a short time before losing sight of him. Taylor Hall, who witnessed the incident, called the police and tried to stop Barton's head from bleeding. Barton was transported to the hospital and put in a medically induced coma. Though he woke up and the bullet was eventually removed, he suffered permanent injuries because of the shooting. Keller was arrested the following day, and he was charged with aggravated malicious wounding and use of a firearm in the commission of a felony.

After the Commonwealth presented its case-in-chief during trial, Keller moved to strike the Commonwealth's evidence, arguing that the Commonwealth had not proved that he acted with malice. Therefore, it had not proved the aggravated malicious wounding charge, because the evidence showed he acted in the heat of passion. The Commonwealth argued that the evidence proved malice. Additionally, the Commonwealth, citing Williams v. Commonwealth, 64 Va. App. 240 (2015), argued that it must be the victim, in this case Barton, who provoked the defendant's heat of passion to support a finding of heat of passion. The trial court denied the motion to strike.

Keller then testified on his own behalf. He explained that he had been drinking all day and was emotional from fighting with his girlfriend. He claimed that he did not intend to shoot Barton; he only intended to fire warning shots in the air because he was nervous that two men he did not know, Barton and Hannaman, were approaching him in a dark parking lot, he did not know their intentions, and Barton was using "salty" language. He denied saying that he was going to "blow his fucking head off" to Barton, but admitted it was possible he had threatened to blow his own head off.

Following his testimony, Keller renewed his motion to strike the evidence. He again argued that the evidence showed heat of passion rather than malice, and, consequently, the

aggravated malicious wounding charge should be struck and an unlawful wounding charge sent to the jury. He argued that the trial court had to focus on his state of mind and his perception of Barton as a threat, rather than whether Barton actually posed a threat. The trial court denied the renewed motion to strike.

The trial court then asked the parties to submit jury instructions. The parties agreed on all instructions, except for one proposed by the Commonwealth. Keller had proposed an instruction on heat of passion, and the Commonwealth did not object. The Commonwealth did ask, however, that if the instruction was granted, the trial court also grant Instruction 14. Instruction 14 provided: "Where it is not the victim of the crime who provoked the defendant's heat of passion, the evidence will not support a finding of heat of passion."

Before addressing Instruction 14, the trial court expressed doubt about whether the heat of passion instruction proposed by Keller was appropriate to the facts of the case. It asked both Keller and the Commonwealth why the heat of passion instruction should be granted. In support of the instruction, Keller pointed out that he was already in an argument with Hodges, when he was confronted by a strange man in a dark parking lot, with words that "had a tendency to provoke." When the trial court pointed out that it had to be the victim doing the provoking, Keller explained that his argument was that he was in an emotional state because of his fight with Hodges and that Barton approaching him in a dark parking lot, using curse words, heightened his heat of passion. The Commonwealth chose not to object to the heat of passion instruction.

The parties then turned to Instruction 14. The Commonwealth pointed out that the language was pulled directly from Williams, 64 Va. App. at 249, where this Court held that the reasonable provocation to support a heat of passion defense must come from the victim. The Commonwealth argued that Keller should have to argue that it was Barton and his actions, and

- 4 -

not Hodges, that provoked the heat of passion. Keller objected, arguing that the Commonwealth was "cherry-picking" a line from a case out of context. He argued that the instruction was misleading because it essentially required "Barton . . . to be the initial trigger for Mr. Keller's heat of passion," and it does not allow for heat of passion to be triggered by one person initially and then increased or triggered again by another person while still in the heat of passion. The trial court granted the instruction over Barton's objection.

The parties then gave closing arguments, and the case was submitted to the jury. The jury found Keller guilty of both charges, and it recommended a total sentence of twenty-three years. The trial court imposed the recommended sentence. Keller now appeals to this Court.

## II. ANALYSIS

### A. *The Trial Court did not Err in Granting Jury Instruction 14*

Keller contends that the trial court erred by granting Instruction 14 because it was confusing and misleading. We disagree.

"As a general rule, the matter of granting and denying instructions does rest in the sound discretion of the trial court." Woods v. Commonwealth, 66 Va. App. 123, 130 (2016) (quoting Cooper v. Commonwealth, 277 Va. 377, 381 (2009)). "However, whether a proffered jury instruction accurately states the law is reviewed *de novo*." Bryant v. Commonwealth, 67 Va. App. 569, 582 (2017), aff'd, 295 Va. 302 (2018). Our responsibility on appeal "is to see that the law has been clearly stated and that the instructions cover all issues which the evidence fairly raises." Williams, 64 Va. App. at 246 (quoting Rhodes v. Commonwealth, 41 Va. App. 195, 200 (2003)). In addition, "[n]o instruction should be given . . . 'which would be confusing or misleading to the jury.'" Graves v. Commonwealth, 65 Va. App. 702, 708 (2016) (alterations in original) (quoting Mouberry v. Commonwealth, 39 Va. App. 576, 582 (2003)).

The challenged instruction, which is not a model jury instruction,[1] reads: "Where it is not the victim of the crime who provoked the defendant's heat of passion, the evidence will not support a finding of heat of passion." The language, as Keller concedes, was lifted *verbatim* from Williams, 64 Va. App. at 249.

Despite this, Keller argues that without the context of Williams, where the defendant conceded that he attacked the victim without provocation, Instruction 14 is not an accurate statement of law. He further argues that Williams does not stand for the proposition that "a heat of passion arising from an interaction with a non-victim precludes a heat of passion arising from a subsequent interaction with a victim." According to Keller, Instruction 14 was confusing because it "could have caused the jury to erroneously conclude that they were precluded from finding that Barton was a cause of [Keller's] heat of passion because Hodges, who is 'not the victim,' was the initial cause of [Keller's] heat of passion." We disagree.

First, we disagree with Keller's argument that Instruction 14 is an inaccurate statement of law outside of the context of Williams. In Williams, the defendant argued that he shot the victim in a heat of passion because he was afraid after his friend was murdered nine days earlier by an unarmed assailant. 64 Va. App. at 252. Though we ultimately concluded that evidence did not support the defendant's argument he acted in a heat of passion, we noted that "*[e]ven if* the news of his friend's death caused Williams grief and fear, that fear was not the result of 'reasonable provocation' *by the victim*," id. at 252-53 (first emphasis added), and "[h]eat of passion requires the simultaneous 'reasonable provocation' *by the victim* and resulting passion by the defendant . . . ," id. at 252 (emphasis added). Furthermore, though Keller argues Williams is

---

[1] "[A] proposed jury instruction submitted by a party, which constitutes an accurate statement of the law applicable to the case, shall not be withheld from the jury solely for its nonconformance with model jury instructions." Brothers v. Commonwealth, 50 Va. App. 468, 473 (2007) (quoting Code § 19.2-263.2).

- 6 -

different because there was no evidence whatsoever to support a heat of passion instruction, we note that, unlike the defendant in Williams, Keller did in fact receive the heat of passion instruction that he requested.

Williams is not the only case where we have applied the principle requiring the victim to be the one to provoke the defendant's heat of passion. In Peeples v. Commonwealth, 30 Va. App. 626, 628 (1999), the defendant sold marijuana to the victim and the victim's friend, and he became angry and argued with them when they would not share it with him. He argued that he acted in a heat of passion when he shot the victim because he thought he was being robbed, he was in a bad neighborhood, the victim had a reputation for violence, and the friend reached towards his waistband as if reaching for a weapon. Id. at 634. But we held that the evidence did not support his heat of passion argument because the "perceived threat" did not come from the victim. Id.; see also Arnold v. Commonwealth, 37 Va. App. 781, 789 (2002) (holding that "where it is not the victim of the crime who invoked the defendant's heat of passion, there was no evidence to support a finding of heat of passion"); Monroe v. Commonwealth, Record No. 2992-07-2 (Va. Ct. App. Mar. 17, 2009) (finding that a person grabbing the defendant's arm while he was already upset was not reasonable provocation to invoke a heat of passion defense for shooting a different individual because the provocation did not come from the victim); Smith v. Commonwealth, Record No. 2992-02-3 (Va. Ct. App. May 4, 2004) (finding that heat of passion instructions were properly denied where the victim did not provoke the defendant's heat of passion).[2]

---

[2] "Although not binding precedent, unpublished opinions can be cited and considered for their persuasive value." Blowe v. Commonwealth, 72 Va. App. 457, 468 n.10 (2020) (quoting Otey v. Commonwealth, 61 Va. App. 346, 350 n.3 (2012)).

Though the facts of this case differ from previous situations in which we have upheld the requirement that the victim be the one to provoke the defendant's heat of passion, it does not render the principle an inaccurate statement of the law. Accordingly, the trial court did not err in finding Instruction 14 to be a correct statement of the law.

Further, we do not agree that Instruction 14 was misleading or that it precluded the jury from finding that his heat of passion arose from the interaction with the victim, Barton, as well as the interaction with Hodges. Perhaps Instruction 14 was not the most artfully worded jury instruction (no doubt because the language was not initially written to be used as an instruction), but it was not confusing or misleading. There is nothing in the jury instruction that refers to or requires the "initial" provocation to come from the victim. Nor does the instruction preclude a jury from considering whether subsequent acts contributed to or caused Keller's heat of passion. Nothing prevented Keller from arguing to the jury that he shot Barton in the heat of passion, though he elected to argue that he shot Barton accidentally. Accordingly, the trial court did not abuse its discretion by granting Instruction 14.

### B. *The Evidence was Sufficient to Find Keller Acted with Malice*

Keller also argues that the trial court erred by denying his motion to strike the evidence because the evidence was insufficient as a matter of law to prove malice rather than heat of passion.

"We apply a deferential standard of review to challenges based on the sufficiency of the evidence, and the decision of '[t]he lower court will be reversed only if that court's judgment is plainly wrong or without evidence to support it.'" Otey v. Commonwealth, 71 Va. App. 792, 797 (2020) (alteration in original) (quoting Cartagena v. Commonwealth, 68 Va. App. 202, 207 (2017)). The "relevant question is, upon review of the evidence in the light most favorable to the prosecution, whether *any* rational trier of fact could have found the essential elements of the

crime beyond a reasonable doubt." Id. (quoting Smith v. Commonwealth, 296 Va. 450, 460 (2018)).

Whether a defendant acted with malice is a question of fact. Robertson v. Commonwealth, 31 Va. App. 814, 823 (2000). Malice is "the doing of a wrongful act intentionally, or without just cause or excuse, or as a result of ill will." Watson-Scott v. Commonwealth, 298 Va. 251, 255-56 (2019) (quoting Dawkins v. Commonwealth, 186 Va. 55, 61 (1947)). It "is evidenced either when the accused acted with a sedate, deliberate mind, and formed design, or committed a purposeful and cruel act without any or without great provocation." Williams, 64 Va. App. at 249 (quoting Robertson, 31 Va. App. at 823). Malice can also be implied by conduct. Watson-Scott, 298 Va. at 256. "Implied malice 'exists where a defendant lacks the deliberate intent to kill, but the circumstances of the defendant's actions are "so harmful that the law punishes the act as though malice did in fact exist."'" Flanders v. Commonwealth, 298 Va. 345, 358 (2020) (quoting Watson-Scott, 298 Va. at 256). "[M]alice may be implied from the deliberate use of a deadly weapon." Watson-Scott, 298 Va. at 256 (quoting Smith v. Commonwealth, 239 Va. 243, 264 (1990)).

"Malice and heat of passion are mutually exclusive; malice excludes passion, and passion presupposes the absence of malice." Dandridge v. Commonwealth, 72 Va. App. 669, 681 (2021) (quoting Canipe v. Commonwealth, 25 Va. App. 629, 643 (1997)). "Heat of passion refers to the *furor brevis* which renders a man deaf to the voice of reason." Id. (quoting Woods, 66 Va. App. at 131). It "excludes malice when provocation reasonably produces fear that causes one to act on impulse without conscious reflection." Id. (quoting Witherow v. Commonwealth, 65 Va. App. 557, 567 (2015)).

Here, the evidence was sufficient to allow a rational jury to reject Keller's heat of passion argument and conclude he "purposely . . . embarked upon a course of wrongful conduct likely to

cause death or great bodily harm." Watson-Scott, 298 Va. at 256 (quoting Essex v. Commonwealth, 228 Va. 273, 280-81 (1984)). Keller fired a gun in Barton's direction after saying he was going to "blow his fucking head off." Despite Keller's claims that he fired all the shots in the air, Hannaman testified that he saw the first shot fired towards Barton before the rest of the shots were fired in the air. Keller testified that he intended the shots as warning shots, but that does not negate the element of malice. Rather, the conscious decision to fire warning shots to scare Barton is evidence "that the act of shooting was done 'with a sedate, deliberate mind, and formed design,' rather than 'on impulse without conscious reflection.'" Williams, 64 Va. App. at 253. Furthermore, the jury is entitled to reject Keller's self-serving testimony. See Flanagan v. Commonwealth, 58 Va. App. 681, 702 (2011).

Even if the jury believed that Keller did not intend to shoot Barton, a fact finder could reasonably conclude that he acted with malice when he fired multiple shots from a weapon in the direction of others. Watson-Scott, 298 Va. at 258 ("[F]iring multiple shots from a handgun in the middle of a populous city is the very definition of an action" committed with malice.). Thus, the evidence was sufficient to prove beyond a reasonable doubt that Keller acted with malice and to support his conviction for aggravated malicious wounding.

Keller argues that he was drunk and in a highly emotional state from arguing with Hodges. He argues that his condition, combined with the fact that he was afraid when two men, one using "salty" language, approached him in a dark parking lot was sufficient evidence to invoke the defense of heat of passion.

But "[w]ords alone, however insulting or contemptuous, are *never* sufficient provocation." Caudill v. Commonwealth, 27 Va. App. 81, 85 (1998) (alteration in original) (quoting Canipe, 25 Va. App. at 643). And although Hannaman testified that Barton was raising his voice, Howard testified that Barton did not threaten or act aggressively towards Keller, and

- 10 -

she even went so far as to describe Barton's attitude as "friendly." Keller shot Barton only seconds after Barton spoke, while he was still at least fifteen feet away. At most, Barton took a step towards Keller while speaking to him. These circumstances do not amount to a level that "*reasonably* produces fear that causes one to act on impulse without conscious reflection." Dandridge, 72 Va. App. at 681 (emphasis added) (quoting Witherow, 65 Va. App. at 567). Thus, we cannot say that heat of passion, as a matter of law, excluded a finding that Keller acted with malice. Consequently, the evidence was not, as a matter of law, insufficient to sustain a conviction for aggravated malicious wounding.[3]

### III. CONCLUSION

Because the trial court did not err in granting Instruction 14 and the evidence was sufficient to support Keller's conviction for aggravated malicious wounding, we affirm the decision of the trial court.

Affirmed.

---

[3] Because Keller's conviction for use of a firearm in the commission of a felony is premised on his conviction for aggravated malicious wounding, he argues that the use of a firearm conviction should also be reversed if the Court finds the evidence insufficient to support the aggravated malicious wounding conviction. Because we find the evidence sufficient to support the underlying conviction, we do not address the use of a firearm charge.