COURT OF APPEALS OF VIRGINIA

Present: Chief Judge Decker, Judges Malveaux and Callins

DAVID ANDREW SHELTON

MEMORANDUM OPINION* BY
v.      Record No. 0397-24-2            CHIEF JUDGE MARLA GRAFF DECKER
APRIL 1, 2025

COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF APPOMATTOX COUNTY
S. Anderson Nelson, Judge

(Philip B. Baker; Sanzone & Baker, L.L.P., on brief), for appellant.

(Jason S. Miyares, Attorney General; Matthew J. Beyrau, Assistant
Attorney General, on brief), for appellee.


David Andrew Shelton appeals his convictions for aggravated malicious wounding and

strangulation in violation of Code §§ 18.2-51.2 and -51.6. He contends that the trial court erred in

admitting two different categories of evidence—the expert testimony of a witness for the

Commonwealth and evidence of alleged prior incidents of misconduct. Shelton also argues that the

trial court erred by refusing his proposed jury instruction on malice and heat of passion. We hold

the trial court did not err and affirm the convictions.[1]

---

* This opinion is not designated for publication. *See* Code § 17.1-413(A).

[1] Having examined the briefs and record in this case, the panel unanimously holds that
oral argument is unnecessary for two reasons. First, "the appeal is wholly without merit." *See*
Code § 17.1-403(ii)(a); Rule 5A:27(a). Second, "the dispositive issue or issues have been
authoritatively decided, and the appellant has not argued that the case law should be overturned,
extended, modified, or reversed." *See* Code § 17.1-403(ii)(b); Rule 5A:27(b).

BACKGROUND[2]

On the evening of March 11, 2022, Shelton and his wife, Elizabeth, had a disagreement because he wanted to pick up some firewood rather than attend a play as they had planned. Shelton also disagreed with Elizabeth's decision to buy a pizza for the children to eat while they were gone. After a thirty-minute argument, Shelton agreed to go to the play. Elizabeth was still upset while the two rode to the theater together, and Shelton threatened to drive back home if she did not stop crying.

After enjoying themselves at the play, Shelton and Elizabeth stopped at a brewery and had a beer. Shelton appeared upset when Elizabeth told him that he should not smoke marijuana with a man they had just met at the brewery.

As they drove home, the disagreement between them escalated to their "yelling back and forth at each other." This continued as they got home and entered the house. Shelton went into the bedroom, and Elizabeth stood in the doorway, about six feet away, as they continued to argue. Shelton initiated the physical altercation by walking toward Elizabeth, grabbing her by the back of the head, and throwing her onto the bed.[3] Holding her in place with his body weight, he then repeatedly struck her while she used her arms in an effort to shield her face from the blows. Shelton used his "physically closed fist" to strike her "all over" her face and head, causing her to "see stars"

---

[2] On appellate review, the Court views the evidence "in the 'light most favorable' to the Commonwealth, the prevailing party in the trial court." *Flanders v. Commonwealth*, 298 Va. 345, 350 (2020) (quoting *Vasquez v. Commonwealth*, 291 Va. 232, 236 (2016). That principle "requires [the Court] to 'discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences [that may] be drawn'" from that evidence. *Commonwealth v. Cady*, 300 Va. 325, 329 (2021) (quoting *Commonwealth v. Perkins*, 295 Va. 323, 324 (2018)).

[3] Elizabeth did not strike, push, or physically threaten Shelton. She also denied "goad[ing]" Shelton to hit her. She admitted that they were both "passionate about [their] feelings" and were "frustrated." She nevertheless blamed herself for the attack that followed, stating, "If I had just shut up and hadn't said anything, I mean, this never would have happened."

from the force of the blows. He then put his hands under her chin and applied pressure to her throat, choking her. Elizabeth "thought [she] was going to die" because he "wouldn't stop hitting [her] and [she] couldn't breathe." Eventually, she lost consciousness.

When Elizabeth awakened, she was alone and on the bedroom floor. She was covered in blood, and her head, face, neck, and hands hurt. She climbed onto the bed, called her grandmother, and reported that Shelton had beaten her.

Just before midnight that evening, the Appomattox County Sheriff's Office received a call from a male who identified himself as Shelton and stated that he had tried to kill his wife. The man asked for deputies to respond to a particular address on Hollywood Road, which was Shelton's address, and said he would be there waiting for them.

As the deputies drove to the scene of the reported incident, they saw Shelton walking on the road. When they stopped to speak to him, the deputies noticed that he had blood on his hands. It was cold outside, yet he was wearing a t-shirt, pants, socks, and no shoes. The deputies detained Shelton, placed him in the police car, and continued driving toward the address. As they neared the home, Shelton identified his house for them.

The deputies knocked on the doors to the home, but no one responded. They asked Shelton about access to the house because the doors were locked. Shelton did not have a key and said, "[Y]'all better hurry up."

Deputy Courtney Griffin forced open the kitchen door and found Elizabeth in the bedroom. He and Sergeant Timothy Dudley noted severe blunt-force trauma to the left side of her face, which was covered in blood. At first, Elizabeth did not want to leave the house for treatment of her injuries because two small children were asleep upstairs. At trial, Elizabeth explained that she was unaware of the severity of her injuries at that time and did not want to wait in the emergency room. Paramedics ultimately convinced her to go to the hospital for treatment.

While Griffin and Dudley were investigating the situation inside the house, Shelton escaped from the patrol car. Law enforcement searched the area for him but did not find him until the next day. When Sheriff's Investigator Justin Rothgeb questioned him, he said that he drank five beers on the night of the incident and neither he nor Elizabeth "had any business driving." He reported that after they got home, Elizabeth blocked the doorway and said, "[G]o ahead and hit me." According to Shelton, Elizabeth called him names and insulted his son. He responded by grabbing her hair, throwing her down, and hitting her in the face with his fists. He also said that if he had continued hitting her, he was "pretty sure" he "would have killed her," so he stopped. When asked if Elizabeth had hit him, he replied, "[N]ot that I know of." He admitted without objection, however, that he had previously hit her.

Forensic nurse examiner Courtney Moss assessed Elizabeth at the hospital, photographing and documenting her injuries. Moss described the swelling and bruising of Elizabeth's face, neck, arms, and hands. Moss also noted her "brain . . . swelling and hematomas" and fractures to her face and hand. Elizabeth had surgery to repair her broken nose. Lacerations to her eyelids required sutures or glue to close. Elizabeth also was missing teeth as a result of the blows to her face.

During the examination, Elizabeth answered Moss's questions about her medical history and Shelton's attack. Elizabeth described the events of the preceding evening, including her memory of Shelton strangling her with both of his hands. Elizabeth said that she must have lost consciousness because she did not remember much about the incident. She told Moss that she had thought she would die and believed Shelton "fully intended to kill" her.

As a result of the attack, Elizabeth suffered from Bell's palsy, a malfunction of a cranial nerve affecting the movement of the face and eye area. She also sustained damage to a second cranial nerve, which caused facial numbness. The nerve damage was unlikely to improve and

caused her face to be asymmetrical. In addition, Elizabeth had persistent difficulty breathing through her left nostril.

Notwithstanding her injuries, Elizabeth testified that she still loved Shelton. Despite seeking a divorce, she spoke with him after he was incarcerated and wanted to protect him. Shelton had apologized to Elizabeth for what he did.

At trial, the court found Linda Ellis-Williams, a coordinator for a domestic violence and sexual assault program, qualified as an expert witness in the field of trauma behavior in abused women and victims of domestic violence. Ellis-Williams testified to the reactions and behaviors that sometimes occur in victims of trauma. She stated that women who are abused or victims of domestic violence commonly return to their abusers and "downplay" what happened to them. In response to defense counsel's questions on cross-examination, Ellis-Williams acknowledged that she was discussing "possibilities" about reactions from victims of domestic violence.

Testifying in his own behalf, Shelton admitted that he was responsible for beating Elizabeth and injuring her. He said that he suffered from "severe depression," "suicidal tendencies," and "social anxieties." He added that he had been diagnosed with an "unspecified personality disorder." He indicated that his disagreement with Elizabeth on the day of the incident began as he was leaving his job at about 4:30 p.m. Despite their argument, he eventually agreed to attend the play with her and said they had a pleasant evening together. However, their argument resumed after they consumed alcohol at a local brewery and left to go home. In their bedroom, Elizabeth brought up Shelton's son and the child's objectionable behavior. According to Shelton, Elizabeth blocked the doorway and prevented him from leaving the bedroom, which made him angry. But, Shelton said, Elizabeth did nothing that caused him to attack her. She did not hit him and merely touched his hand. He recalled grabbing her by the hair. And he admitted that he must have struck her, although he claimed he did not remember

doing so. After seeing she was "covered in blood" and her "face was really messed up," he "freaked out" and called 911. Afterward, he left the house.

The jury found Shelton guilty of aggravated malicious wounding and strangulation. Defense counsel made a motion to set aside the verdict based generally on the three allegations of error he raises on appeal. The trial court denied the motion and sentenced Shelton to forty-five years of incarceration with thirty-five years suspended.[4]

ANALYSIS

I. Admission of Ellis-Williams's Testimony

Shelton contends that the trial court erred by admitting Ellis-Williams's expert testimony and then refusing to strike it. Relying on Virginia Rule of Evidence 2:702(b), he maintains that expert testimony is admissible only if "quantified to a 'reasonable probability.'" He asserts that Ellis-Williams's testimony contained a "range of possibilities" rather than probabilities and therefore was "speculative as a matter of law." Shelton further suggests that the testimony did not apply specifically to Elizabeth's situation. On this record, we hold that his admissibility challenge is procedurally barred.

The record reflects that after an unrecorded sidebar conference, defense counsel declined the opportunity to voir dire the witness, and the trial court found Ellis-Williams was qualified to testify as an expert. The record does not reflect that Shelton objected to Ellis-Williams's qualification as an expert when the trial court allowed her to testify. Shelton also raised no objections *during* Ellis-Williams's testimony and cross-examined her only briefly.

---

[4] Shelton was also convicted, on his guilty plea, of fleeing from a law enforcement officer in violation of Code § 18.2-460(E). He was sentenced to twelve months of incarceration for that offense, with all twelve months suspended. His assignments of error on appeal do not relate to that conviction. They challenge only rulings related to his convictions for aggravated malicious wounding and strangulation.

At the conclusion of all of the Commonwealth's evidence, defense counsel asserted that before the trial court found Ellis-Williams was qualified to testify as an expert, he had "questioned whether she'd invade the province of the jury as to . . . any element that might be relevant." Defense counsel then asserted that Ellis-Williams "did the opposite" and, rather than "invad[ing] the province of the jury," "she testified about nothing to do with this case."[5] Defense counsel asserted that Ellis-Williams's opinions both "didn't relate to th[e] case" and were offered only to a "possibility" rather than a "probability." As a result, he contended they were not admissible as expert testimony. The trial court refused what it characterized as Shelton's objection or motion to strike Ellis-Williams's testimony, ruling that the defense "opened the door" by questioning Elizabeth about her reactions after the incident and the fact that she had maintained contact with Shelton.

"No ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable this Court to attain the ends of justice." Rule 5A:18. "The purpose of th[e] contemporaneous objection requirement [in Rule 5A:18] is to allow the trial court a fair opportunity to resolve the issue at trial, thereby preventing unnecessary appeals and retrials." *Hogle v. Commonwealth*, 75 Va. App. 743, 755 (2022) (alterations in original) (quoting *Creamer v. Commonwealth*, 64 Va. App. 185, 195 (2015)). To preserve an issue for appeal, an objection "must be both specific and timely—so that the trial judge would know the particular point being made in time to do something about it." *Bethea v. Commonwealth*, 297 Va. 730, 743 (2019) (emphases omitted) (quoting *Dickerson v. Commonwealth*, 58 Va. App. 351, 356 (2011)).

---

[5] To the extent Shelton now argues that he did not know what Ellis-Williams was going to say until he cross-examined her at trial, the record reflects that the prosecution provided defense counsel with a summary of her expected testimony prior to trial.

The application of this rule is particularly clear when it comes to challenging the admission of evidence. "To be timely, an objection to the admissibility of evidence must be made when the occasion arises—that is, when the evidence is offered, the statement made[,] or the ruling given." *Johnson v. Commonwealth*, 58 Va. App. 625, 638 (2011) (quoting *Zook v. Commonwealth*, 31 Va. App. 560, 568 (2000)). "A litigant may not, in a motion to strike [the evidence], raise for the first time a question of admissibility of evidence. Such motions deal with . . . sufficiency rather than . . . admissibility . . . ." *Woodson v. Commonwealth*, 211 Va. 285, 288 (1970), *quoted with approval in Bitar v. Rahman*, 272 Va. 130, 140 (2006), *and Sample v. Commonwealth*, 303 Va. 2, 16 (2024); *accord Wells v. Commonwealth*, 65 Va. App. 722, 729, 732 (2016). And "[i]f a party fails to timely and specifically object, he waives his argument on appeal." *Swezey v. Commonwealth*, 77 Va. App. 809, 820 (2023).

The record before us does not demonstrate that Shelton noted an objection—much less the specific claim he raises on appeal—to Ellis-Williams's testimony *when it was introduced* so that the trial court could address the claim and take any necessary corrective action. As a result, Shelton failed to establish that he preserved this issue for appellate review. *See* Rule 5A:18; *Hicks v. Commonwealth*, 71 Va. App. 255, 267-68 (2019) ("[I]t is an appellant's burden to present a record adequate to show that he preserved his assignment of error [for appeal]." (citing *Lee v. Lee*, 12 Va. App. 512, 516 (1991) (en banc))). Although there are exceptions to Rule 5A:18, Shelton has not raised them, and we will not invoke them sua sponte. *See Hammer v. Commonwealth*, 74 Va. App. 225, 236-37 (2022) (citing *Jones v. Commonwealth*, 293 Va. 29, 39 n.5 (2017)).

## II. Alleged Evidence of Shelton's Other Acts of Violence

Shelton contends that the trial court erred "by allowing the Commonwealth to present evidence of alleged prior incidents of misconduct to the jury, despite the [c]ourt's earlier instruction

prohibiting the same after [a] sidebar with counsel." He maintains that during a sidebar conference, the trial court sustained his objection to Moss's testifying about "an alleged prior assault or strangulation." He suggests the trial court's later ruling on his objection during Moss's testimony violated the earlier sidebar ruling. We disagree with Shelton's characterization of both the record and the trial court's ruling on Moss's testimony.

The record shows that as the prosecutor began to question Moss about her examination of Elizabeth and the content of her forensic examination report, defense counsel asked to approach the bench. That is all we know from the record. Any sidebar discussion that may have followed was not recorded. *See Hicks*, 71 Va. App. at 267-68.

Moss then used her report to recite the questions she posed to Elizabeth during the examination and Elizabeth's responses. Moss testified that she asked Elizabeth if "there were any prior incidents of strangulation or domestic violence." After Moss testified that Elizabeth had said yes, Shelton objected. The prosecutor acknowledged, "That gets to one of the issues," and advised Moss, "[Y]ou don't need to go into that." The trial court followed up with the statement, "[We d]o not need that question or the answer." Then, the trial court specifically "directed [the jury] to disregard any reference to that question."

After the prosecutor concluded her direct examination of Moss, Shelton moved for a mistrial based upon what he characterized as Moss's "other strangulation testimony." Shelton argued that despite an earlier sidebar ruling that he said prohibited testimony about other incidents of violence, Moss testified that Elizabeth reported "another strangulation." After the court reporter read back the testimony, however, Shelton conceded that the "specific question" Moss testified she asked Elizabeth related to "prior incidents of strangulation *or domestic violence*." (Emphasis added). The trial court found that Moss "did not go into prior incidents[ and] just said that one had occurred." It also noted that Moss's question and Elizabeth's answer did not identify Shelton as the aggressor in

the prior situation. The court further found that Shelton's objection "was made and sustained" and that the limiting instruction it provided to the jury was sufficient to remove any prejudice to Shelton.[6] As a result, the court denied Shelton's motion for a mistrial. Finally, in advising the jurors before they retired to deliberate, the court additionally instructed them that they "must not consider any matter that was rejected or stricken by the [c]ourt" because it was "not evidence and should be disregarded."

Contrary to Shelton's suggestion, the trial court did not admit into evidence "alleged prior incidents of misconduct." The record before us demonstrates that during Moss's testimony, Shelton objected to her recitation of the question she asked Elizabeth about whether she had experienced prior incidents of strangulation or domestic violence and Elizabeth's affirmative response.[7] The trial court *sustained* Shelton's objection and promptly instructed the jury to "disregard any reference to that question," specifically stating that neither Moss's question nor Elizabeth's answer was "need[ed]." "Unless the record shows otherwise, . . . we presume that a jury follows an explicit cautionary instruction given by the trial court." *Riner v. Commonwealth*, 268 Va. 296, 317 (2004). Nothing in the record suggests that the jury disregarded the trial court's instruction. Consequently, we presume the jury followed the instruction, thus eliminating any possible unfair

---

[6] The record also reflects that before introducing Moss's forensic examination report into evidence, the Commonwealth redacted it to eliminate any reference to past acts of domestic violence or strangulation.

[7] Shelton's assignment of error does not challenge the trial court's later decision to deny his motion for a mistrial. He made that motion only after the prosecution asked Moss approximately seventy more questions and concluded its direct examination of her. We do not separately consider the court's ruling on the mistrial motion because "[o]nly assignments of error listed in the brief will be noticed by this Court." *See* Rule 5A:20(c)(1). *See generally Yeatts v. Commonwealth*, 242 Va. 121, 136-37 (1991) (holding that merely making a contemporaneous objection when a witness improperly referenced the defendant's "prior crimes" was insufficient to preserve for appeal a challenge to the denial of a later mistrial motion made on that same ground because the motion came too late), *cited with approval in Carter v. Commonwealth*, 293 Va. 537, 549 (2017).

prejudice stemming from Moss's isolated statement and the prosecutor's brief generic comment about it. We hold the trial court did not err.[8]

### III. Jury Instruction on Heat of Passion

Shelton proffered a jury instruction stating that heat of passion excludes malice when it "arises from provocation that reasonably produces an emotional state . . . such as [h]ot blood, rage, anger, resentment, terror, or fear so as to cause one to act on impulse without conscious reflection." The instruction included that an act is not attributable to heat of passion when "passion has cooled" or "there has been a reasonable time or opportunity for cooling." The trial court refused Shelton's proposed jury instruction. Instead, the court granted the Commonwealth's proposed instruction on malice, which did not mention heat of passion. The court reasoned that the record did not contain any evidence of heat of passion. Shelton challenges this ruling, arguing that the trial court's decision foreclosed the jury's ability to convict him of a lesser offense.

"As a general rule, the matter of granting and denying instructions . . . rest[s] in the sound discretion of the trial court." *Dandridge v. Commonwealth*, 72 Va. App. 669, 679 (2021) (quoting *Lienau v. Commonwealth*, 69 Va. App. 254, 263 (2018) (alterations in original)). "The trial court's 'broad discretion in giving or denying instructions requested' is reviewed for an abuse of discretion." *Id.* (quoting *King v. Commonwealth*, 64 Va. App. 580, 586 (2015) (en banc)). "Our sole responsibility in reviewing [jury instructions] is to see that the law has been clearly stated and that the instructions cover all issues which the evidence fairly raises." *Pena Pinedo v. Commonwealth*, 300 Va. 116, 121 (2021) (alteration in original) (quoting *Cooper v.*

---

[8] Because we hold that the record does not establish error, we do not consider whether the claimed error was harmless. *See generally Sanders v. Commonwealth*, 64 Va. App. 734, 742 n.3 (2015) (applying best-and-narrowest-ground principles to decide the case on the merits rather than on harmless error).

*Commonwealth*, 277 Va. 377, 381 (2009)). "[A]n instruction is proper only if supported by more than a scintilla of evidence." *Avent v. Commonwealth*, 279 Va. 175, 202 (2010) (quoting *Commonwealth v. Sands*, 262 Va. 724, 729 (2001)). Simply put, "it is not error to refuse an instruction when there is no evidence to support it." *Commonwealth v. Cary*, 271 Va. 87, 100 (2006) (emphasis omitted) (quoting *Sands*, 262 Va. at 729).

"'Heat of passion refers to the furor brevis which renders a man deaf to the voice of reason.' '[It] excludes malice when provocation reasonably produces fear [or anger] that causes one to act on impulse without conscious reflection.'" *Woods v. Commonwealth*, 66 Va. App. 123, 131 (2016) (alterations in original) (quoting *Rhodes v. Commonwealth*, 41 Va. App. 195, 200 (2003)). "[T]he law requires the simultaneous occurrence of both reasonable provocation and passion." *Williams v. Commonwealth*, 64 Va. App. 240, 249 (2015) (emphases omitted) (quoting *Graham v. Commonwealth*, 31 Va. App. 662, 671 (2000)). Further, "[m]alice and heat of passion cannot coexist." *Woods*, 66 Va. App. at 131 (quoting *Turner v. Commonwealth*, 23 Va. App. 270, 275 (1996), *aff'd per curiam*, 255 Va. 1 (1997)).

"'[W]ords alone, no matter how insulting, are never sufficient to constitute heat of passion' so as to negate the presence of malice." *Washington v. Commonwealth*, 75 Va. App. 606, 619 (2022) (quoting *Palmer v. Commonwealth*, 71 Va. App. 225, 237 (2019)). Thus, a trial court should not instruct a jury on heat of passion when the evidence demonstrates only that the defendant and the victim exchanged "harsh words" before the defendant attacked her. *See Caudill v. Commonwealth*, 27 Va. App. 81, 85 (1998); *see also Washington*, 75 Va. App. at 620 (holding that even highly "incendiary" "racist language," with its potential to cause an "utterly devastating impact on individuals and society," cannot "constitute provocation sufficient to support the heat of passion defense").

It was undisputed that Shelton and Elizabeth argued on the night of March 11, 2022. Upon returning home after spending a portion of the evening companionably at the theater, their argument escalated, and they were yelling at each other. Even if that disagreement caused Shelton to be angry, he admitted that Elizabeth did not physically provoke him to push her down on the bed, strike her head and face repeatedly with his closed fists, and choke her until she was unconscious. Without evidence of any *physical provocation* by Elizabeth, the record establishes as a matter of law that Shelton's brutal attack upon her could not have been committed in the heat of passion. *See Washington*, 75 Va. App. at 619-20. For this reason, the evidence did not support Shelton's proposed instruction, and the trial court did not abuse its discretion by refusing it.

CONCLUSION

We hold that Shelton failed to establish that the trial court committed evidentiary error. He did not preserve his appellate challenge to the admission of the testimony of Ellis-Williams because he did not make a timely objection at trial. He also failed to establish that the court erred by allowing the Commonwealth to present evidence of alleged prior incidents of misconduct to the jury because, in fact, the record shows that the court sustained Shelton's objection to that evidence and instructed the jury to disregard it. Finally, we conclude that the court did not err by refusing Shelton's proffered jury instruction on heat of passion because the evidence did not support the instruction. Consequently, the judgment of the trial court is affirmed.

*Affirmed.*